## APPEAL OF ANDERSON & CO.

Docket No. 5442.    Promulgated April 5, 1927.

No part of the sales price of articles sold on the deferred payment basis constituted interest or expense which could be excluded from gross income.

*Joseph Getz*, *C. P. A.*, and *W. J. Hogan*, *Esq.*, for the petitioner.
*Thomas P. Dudley, Jr.*, *Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income and profits taxes for 1919 and 1920, of $3,055.18 and $127.78, respectively. The appeal is based on the claim that certain items accrued on the taxpayer's books were unearned and for that reason improperly included in income.

### FINDINGS OF FACT.

The taxpayer was incorporated March 7, 1912, under the laws of New York, for the purpose of conducting a business of selling pianos

and other musical instruments on the installment plan. Its principal place of business is now located at 291 Livingston Street, in Brooklyn.

The instruments are sold under a contract requiring a cash payment of approximately 10 per cent of the sale price and payment of the remainder in thirty-six equal monthly installments. The form of contract used is as follows:

ANDERSON & Co.,
291 Livingston Street,
Brooklyn, N. Y., _____, 19__.

NOTICE.—All payments must be made direct at the office of Anderson & Co., 291 Livingston Street, Brooklyn, New York.

If payments are made when due, that is every _____ at the office of Anderson & Co., 291 Livingston Street, Brooklyn, N. Y. (and no collector has called) there will be no interest added. But in the event that payments are allowed to become delinquent, that is, where the _____ payments are not paid when due at our office and our collector has called for payments, interest will be charged at the rate of six per cent.

This _____ must not be removed or placed on storage without the written consent of ANDERSON & CO. By so doing, the purchaser violates this contract and cancels the insurance, and ANDERSON & CO. shall deem themselves insecure and may take and retain possession of said _____.

This is to certify that I, _____ have received of Anderson & Company, Brooklyn, N. Y., one _____ No. _____ Wood_____ which I am at liberty to use with care, keeping it in as good order as when received. I have agreed to purchase said _____ and will pay the sum of _____ dollars ($ _____) in the following manner, viz: _____ dollars ($ _____) cash on the signing and delivery of a copy of this contract _____ and _____ dollars ($ _____) in regular _____ payments of _____ dollars ($_____) until the full amount, _____ dollars ($ _____) payable at their warerooms, 291 Livingston Street, or sooner, at my option.

I agree that if default be made in any of the aforesaid payments the full amount of the purchase price shall thereupon become due and payable.

I have also agreed to make future payments at the office of Anderson & Company, on the _____ day of each _____ beginning on _____ without further notice or demand.

The sale of said _____ is conditional upon the punctual payments of said sums, as above stated; the title of ownership to remain in the said ANDERSON & CO., of Brooklyn, N. Y., until all the payments are made in full, at which time there shall be a bill of sale absolute made out and delivered to the said _____.

But if default shall be made in said payments, or if the said ANDERSON & CO., of Brooklyn, N. Y., have reasons to deem themselves insecure, or if I shall sell, offer for sale, remove or attempt to remove the said_____ from _____ without the written consent of said ANDERSON & CO., of Brooklyn, N. Y., then and in that case they may without notice or demand resume actual possession of said _____, and all payments made thereon shall be credited for the use thereof. And I do further agree and promise that if at any time hereafter the within _____ _____ is returned to me, or retaken by the said ANDERSON & CO., because

of my default in any of the foregoing conditions, that I will pay all installments due and payable at the time of the return or retaking of the aforesaid_____

I also agree to pay all damages sustained if the _____ be injured at any time by any fault or neglect on my part, and to retain it for use only.

It is also understood that the purchaser shall keep this instrument insured, loss if any to be payable to ANDERSON & CO., as their interest may appear.

The above agreement has this day been executed in duplicate and one duplicate has been delivered to me and I have no understanding, verbal or otherwise, differing from it.

Witness:

Three references:

_____ Residence_____
_____ Business_____
_____ Place of business_____

The taxpayer keeps its books and reports its income on the accrual method. When a sale is made, the customer is charged and sales credited with the full amount of the sale price. As payments are made, the customer is credited and cash is charged with the amount of such payments. At the close of the year, total sales are carried into income.

The gross installment sales for 1919 and 1920 were $123,958.67 and $113,547.03, respectively. The price at which instruments were sold was cost plus 120 per cent.

In the event a purchaser pays the balance on his account before it is due under the sales contract, and insists on a discount for such advance payment, a discount is allowed in proportion to the degree of insistence on the part of the customer, but in no case does net discount exceed 30 per cent of the total installments. If the customer does not demand a discount, no discount is allowed.

On its return for 1919 the taxpayer deducted $9,824.48 as a " Reserve for Losses." This amount represented an estimate of prospective losses on gross sales made during that year and was disallowed as a deduction by the Commissioner.

### OPINION.

MARQUETTE: The taxpayer does not claim that the Commissioner erred in disallowing as a deduction in 1919, the amount set up as a " Reserve for Losses," but does claim that a certain per cent of the sale price of each instrument sold on the installment plan was interest on the deferred payments and being interest was not earned until such payments were due, and that such unearned interest was improperly accrued on the books and erroneously included in income for the year of the sale. The same claim is made with reference to other amounts designated by the taxpayer as charges for the collection of deferred payments.

The taxpayer's secretary and general manager testified that of the 120 per cent added to cost to arrive at sale price, 40 per cent was added for overhead, 40 per cent as interest, 20 per cent to cover charges for collection and the remaining 20 per cent as profit. His explanation is more easily understood if an illustration be used. In the case of an instrument costing $150, the sale price would be $330, of which $30 would be required as a cash payment, leaving $300 to be paid in thirty-six equal monthly installments. The amount allocated to interest, it was explained, would represent 10 per cent on the deferred payments, as follows: $30 or 10 per cent of $300, the amount of the deferred payments as of the beginning of the first year; $20, or 10 per cent of $200, the amount of the deferred payments as of the beginning of the second year; and $10, or 10 per cent of $100, the amount of the deferred payments as of the beginning of the third year. Testimony was also advanced to the effect that it is the custom in the taxpayer's particular line of business, to arrive at the sale price in the manner explained. This explanation is the sole ground for claiming that the percentages in question were improperly accrued on the books of the taxpayer during the years 1919 and 1920.

If the mere designation of a part of the sale price of an instrument as interest was sufficient to identify such part as interest, there might be some merit in the argument advanced, but terminology alone can not make out of the sale price of an article something that it is not. Interest has a much narrower meaning than is sought to be attributed to it here, for like dividends or profits derived from the purchase and sale of goods, it is merely one form of return on the use of capital. It is defined in Webster's New International Dictionary as:

The price or rate of premium per unit of time that is paid by a borrower for the use of what he borrows; specif., a rate per cent of money paid for the use of money or the forbearance of demanding payment of a debt; also, the system of permitting or requiring this payment on the money so paid.

In *Maryland Casualty Co.* v. *Omaha Electric Light & Power Co.*, 157 Fed. 514, interest was defined in a concise manner as "a consideration paid for the use of money or for forbearance in demanding it when due." In *Carlson* v. *Helena*, 39 Mont. 82; 102 Pac. 39, the court said:

Interest is merely an incident to the debt, to be paid from time to time or at the date when the principal falls due, in consideration of the forbearance extending to the debtor, and becomes a part of the debt, or debt at all, only when it has been earned.

The facts in the instant case do not even suggest that the amounts in question constitute interest. The records of the taxpayer make no showing of such interest, and the form of contract used by the

taxpayer and its customers discloses that the only interest contemplated between the parties is interest on installments not paid when due, the amount to be computed at the rate of 6 per cent from the installment date until paid. Furthermore, the taxpayer's explanation that the amount which it now claims as interest represents interest at 10 per cent on the deferred payments over the three-year period, is contradictory in itself. In making such a computation the amounts claimed as interest are also used as a part of the principal on which the interest is computed. The amount allocated to interest for each year is 10 per cent of the amount due at the beginning of each such year, even though one-twelfth of the amount payable during the year is paid at the end of each month. Following the taxpayer's line of reasoning to its logical conclusion, it appears that a customer would pay interest for the whole year on the first installment, payment of which is in fact deferred for only one-twelfth of that time, and only in case of the twelfth installment would the customer get full benefit of the forbearance for which he would pay. Interest as a payment for forbearance in demanding money when due logically runs from the date due over the period of forbearance, but in this instance the taxpayer seeks to extend it beyond the period of forbearance to the end of the year in which the installment is due and treats such payment both as a payment for forbearance and as part of the principal.

The taxpayer's position is also at variance with its practice where an installment is paid before the payment date fixed by the contract. If any part of the amount of such installment is interest for deferring the payment of such installment, discount should be allowed, as a matter of course, to the extent that the installment is paid before its payment is due. In such cases, however, the taxpayer allows no discount unless demand is made therefor by the customer, and then only in proportion to the degree of the customer's insistence.

The argument that a part of the sale price in deferred payment sales, or the difference between the cash price and the deferred payment price is interest on the deferred payment is interesting but by no means novel or new. The same argument has often been advanced in suits to recover deferred payments, which suits were defended on the ground that the difference between the cash sale price and the deferred payment sale price was interest and being interest was usurious. In such cases the courts have uniformly held that a cash sale of an object is a different sale from a deferred payment sale of the same object, and the fact that the deferred payment sale price is greater than the cash sale price does not make interest of the difference. *Hogg* v. *Ruffner*, 1 Black 115; *Luzzatto* v.

*Kaplan*, 188 N. Y. S. 522; *Holland-O'Neal Milling Co.* v. *Rawlings*, 217 Mo. App. 466; 268 S. W. 683; *Smith* v. *Kaufman*, 145 Ark. 548; 224 S. W. 978; *Davidson* v. *Davis*, 59 Fla. 476; 52 So. 139; *Commercial Credit Co.* v. *Shelton*, 139 Miss. 132; 104 So. 75. In *Davidson* v. *Davis*, *supra*, the court said:

> The law is well settled that usury can only attach to a loan of money, or to the forbearance of a debt, and that on a contract to secure the price or value of work and labor done, or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves if credit ·be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done and property sold; and the difference between cash and credit in such cases, whether 6, 10, or 20 per cent., must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal.

See also *Appeal of Marsh & Marsh, Inc.*, 5 B. T. A. 902.

With reference to the amount designated as collection charges, the contention of the taxpayer is without merit and the answer thereto is quite clear. In this instance the expense of collecting installments is no different from any other expense of carrying on the business, and certainly no expense can be said to be income. It is true that in any selling business the sale price of an article must be sufficiently high so that such expenses may be met, but such expenses are a matter of deduction and affect income only when incurred. The designation of an arbitrary part of the sale price of an instrument as an amount to cover expenses to be incurred can have no effect on income.

Counsel for the taxpayer placed great emphasis on our opinion in *Appeal of Chatham & Phenix National Bank*, 1 B. T. A. 460, but that case is clearly distinguishable. There the question was whether bank discount which was neither received nor accrued could properly be carried into income. In this case, however, we have seen that the items of interest and discount are not involved, and for that reason there is no possible basis for comparing the two cases.

The total sale price of instruments sold on the deferred payment plan accrued in the year of the sale and since the taxpayer kept its books by the accrual method, which is one of the regularly recognized methods of keeping accounts, *Appeal of Henry Reubel*, 1 B. T. A. 676, and it does not appear that the books so kept improperly reflect income, the Commissioner's determination must be approved.

> *Judgment will be entered for the Commissioner.*