GEORGE S. MACDONALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55905, 64264. Promulgated June 8, 1934.

*Frederick Schwertner, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

TRAMMELL: These are proceedings for the redetermination of deficiencies in income tax for 1928 in the amount of $4,023.88 and for 1929 in the amount of $2,334.68. The errors assigned in each of the petitions are (1) the failure of the Commissioner to allow as deductions losses claimed in each of the years from the sale of stock and (2) the failure of the Commissioner to allow as deductions interest alleged to have been paid by the petitioner during the taxable years. The proceedings were consolidated for hearing.

The petitioner is an individual, residing at New Rochelle, New York.

In January of 1928 the petitioner, owning all the common stock of the Lockwood Trade Journal Co., consisting of 1,500 shares of

the par value of $100 each, entered into negotiations with one Jerome D. Maley, as trustee, for the purchase of 1,425 shares of the preferred stock of the company of the par value of $100 each, and on July 10, 1928, the petitioner entered into an agreement with Maley, the pertinent portions of which are as follows:

WHEREAS, said Maley, as Trustee under an agreement dated June 1924, between Dorothy Martyn Freeman, Jocelyn Maley Stedman, Katheryn Maley, and Elizabeth Maley Shoughrue (parties of the first part, therein and herein called "granddaughters"), Edith Hagner, Eleanor V. Neal and Stephanie Dufuur (parties of the second part) and Jerome D. Maley (Party of the third part), is the owner of fourteen hundred and twenty-five (1,425) shares of the preferred stock of said Lockwood Trade Journal Company, Inc., of the par value of One Hundred Dollars ($100.) a share; and

WHEREAS, Macdonald has agreed to purchase said preferred stock from said Maley on the terms and conditions set forth in this contract; and

WHEREAS, simultaneously with the delivery hereof, said Granddaughters and said Maley, as such Trustee, have by instrument in writing dated July 10th, 1928, a copy of which is hereto attached and marked Exhibit B, sold, assigned and transferred to Jerome D. Maley and Bankers Trust Company, of the City of New York, and the survivor of them, as Trustees, hereinafter called Trustees, all their rights and interest in this contract and in the proceeds hereof, and everything to which they may become entitled hereunder, and have appointed said Trustees and the survivor of them as the persons who shall have the right to exercise any and all of the rights and options given to said Maley under this contract.

Now THEREFORE, the parties hereto agree as follows:

FIRST: Said Maley hereby sells to Macdonald and Macdonald hereby purchases from said Maley said fourteen hundred and twenty-five (1,425) shares of preferred stock of said Lockwood Trade Journal Company, Inc., of the par value of One Hundred Dollars ($100.) per share, which fourteen hundred and twenty-five (1,425) shares are hereinafter referred to as the preferred stock, and Macdonald agrees to pay for said preferred stock the sum of Three Hundred and twenty-two thousand, two hundred and fifty Dollars ($322,250.00) as follows:

Sixty-two thousand, seven hundred ($62,700.) Dollars in cash, the receipt whereof by said Maley is hereby acknowledged;

One hundred and twenty-eight thousand, two hundred and fifty Dollars ($128,250), to be evidenced by nine (9) promissory notes of Fourteen thousand, two hundred and fifty Dollars ($14,250.00) each, the first note to be payable on January 1st, 1929, and one note to be payable on the first day of each July and January thereafter, to and including January 1st, 1933. Said nine notes shall be marked, and shall be hereinafter referred to as Series A. Notes, the first which shall be in the following form; and each succeeding note shall be in the same form, with each date (except the date on which the note is executed) advanced six months beyond the corresponding date in the preceding note:

"SERIES A NOTE"

No. —— Payable January 1st, 1929                                    $14,250.

FOR VALUE RECEIVED, GEORGE S. MACDONALD promises to pay to the order of Jerome D. Maley and Bankers Trust Company as Trustees under an agreement July 10, 1928, between themselves and Dorothy Martyn Freeman, Jocelyn

Maley Stedman, Katheryn Maley Smith, and Elizabeth Maley Shoughrue, at the Harriman National Bank, No. 527 Fifth Avenue, Borough of Manhattan, New York City, the sum of Fourteen Thousand, two hundred and fifty dollars ($14,250.00) on January 1st, 1929. If this note is not paid on January 1st, 1929, then as long as said George S. Macdonald pays interest thereon from January 1st, 1929, at the rate of six per cent. (6%) per annum, in equal monthly installments, and pays such interest for each month beginning with the month of January 1929 on or before the last day of the following month, the time for the payment of such principal of this note shall be extended, but the time for the payment of such principal shall not in any event be extended beyond January 1st, 1930. Said George S. Macdonald shall have the right to pay all or any part of the principal of this note, with the interest if any then accrued thereon, at any time before maturity, upon giving at least ten days' prior notice by mail addressed to said Jerome D. Maley at 312 Second Avenue, Daytona, Florida, and to Bankers Trust Company at 16 Wall Street, New York City, New York.

Dated, New York, July 10, 1928.

Eighty thousand ($80,000.00) to be evidenced by one promissory note for Eighty thousand Dollars ($80,000.00) Payable January 1st, 1938, and drawing interest from January 1st, 1933, at the rate of six per cent. (6%) per annum, such interest to be payable in monthly installments of four hundred Dollars ($400.) each on the last day of each month beginning on the last day of January 1933. Said note shall be marked and shall be hereinafter referred to as Series B Note, and shall be in the following form:

" SERIES B NOTE "

Payable January 1st, 1938                                                    $80,000.00

FOR VALUE RECEIVED, GEORGE S. MACDONALD promises to pay to the order of Jerome D. Maley and Bankers Trust Company as trustees under an agreement dated July 10, 1928, between themselves and Dorothy Martyn Freeman, Joselyn Maley Stedman, Katheryn Maley Smith, and Elizabeth Maley Shoughrue, at the Harriman National Bank, 527 Fifth Avenue, Borough of Manhattan, New York City, the sum of Eighty thousand Dollars ($80,000.00) on or before January 1st, 1938, with interest at the rate of six per cent (6%) per annum from January 1st 1933, such interest to be payable in monthly installments of Four hundred Dollars ($400.) each on the last day of each month beginning on the last day of January 1933. Said Macdonald shall have the right to pay the whole or any part of the principal of this note, with interest if any then accrued thereon, at any time before maturity upon giving ten days' prior notice by mail addressed to said Jerome D. Maley at 312 Second Avenue, Daytona, Florida, and to Bankers Trust Company at 16 Wall Street, New York City, New York, and in the event of such prepayment the amount of the monthly interest payments shall be reduced accordingly. In the event of the failure of George S. Macdonald to pay any installment of interest within thirty days from the date the same becomes payable, this entire note shall become due and payable at the option of the holders thereof.

Dated, New York, July 10, 1928.

Fifty-one thousand, three hundred Dollars ($51,300.) to be evidenced by fifty-four notes each for Nine hundred and fifty Dollars ($950.), the first note to be payable on the 15th day of July, 1928, and one note to be payable on the 15th day of each month thereafter to and including December 15th, 1932. Said notes shall be marked and shall be hereinafter referred to as Series C Notes, and shall be in the following form;

" SERIES C NOTE "

No.——Payable——————  $950.00

FOR VALUE RECEIVED, George S. Macdonald hereby promises to pay to the order of Jerome D. Maley and Bankers Trust Company, as Trustees under an agreement dated July 10, 1928, between themselves and Dorothy Martyn Freeman, Joselyn Maley Stedman, Katheryn Maley Smith and Elizabeth Maley Shoughrue, at the Harriman National Bank, 527 Fifth Avenue, Borough of Manhattan, New York City, the sum of Nine hundred and fifty Dollars ($950.) on the 15th day of——————, 19—.

Said George S. Macdonald shall have the right to pay this note at any time before maturity upon giving ten days' prior notice by mail addressed to Jerome D. Maley at 312 Second Avenue, Daytona, Florida, and to Bankers Trust Company at 16 Wall Street, New York City, New York.

Dated, New York, July 10, 1928.

Macdonald shall have the right to pay any of said notes before the day on which they respectively become payable, provided that he shall give at least ten days' prior notice by mail to Jerome D. Maley at 312 Second Avenue, Daytona, Florida, and Bankers Trust Company at 16 Wall Street, New York City, New York, specifying the notes that he will take up and the date on which he will take them up, and upon the giving of such notice, the notes specified in such notice shall become due and payable on the date specified in such notice, unless they shall have become due at an earlier date by their terms or under the terms of this agreement.

SECOND : Simultaneously with the execution hereof, said Maley has delivered said fourteen hundred and twenty-five (1,425) shares of preferred stock to Macdonald, and new certificates for fourteen hundred and twenty-five (1,425) shares of such preferred stock, issued in the name of George S. Macdonald and duly endorsed by him in blank, so that the same may be transferred and delivered, and also Fifty-seven Dollars ($57.00) to cover the cost of stock transfer stamps, have been deposited with the depositary, as collateral security for the payment by Macdonald of said notes and of the amounts that Macdonald has agreed to pay as above set forth.

Petitioner paid the sum of $62,700 in cash and executed the nine series A notes in the sum of $14,250 each, totaling $128,250, the series B note in the sum of $80,000, and 54 series C notes in the sum of $950 each, totaling $51,300, as specified in the agreement.

A new stock certificate for 1,425 shares of preferred stock of the Lockwood Trade Journal was issued in the name of George A. Macdonald. The petitioner endorsed the certificate in blank and it was deposited with the Harriman National Bank, to be held in escrow as security pending final payment for the stock. The series A notes were paid as they became due, except the last three, which fell due, respectively, January 1, 1932, July 1, 1932, and January 1, 1933, and were extended to January 1, 1935, July 1, 1935, and January 1, 1936, respectively. The series B note in the sum of $80,000 was extended to January 1, 1940.

The petitioner paid all of the 54 of the series C notes in the sum of $950 each on the due dates thereof.

The petitioner in the years 1928 and 1929 entered into contracts to sell some of the 1,425 shares of preferred stock of the Lockwood Trade Journal Co. as follows:

| Sold to | Shares sold | Date of contract | Selling price |
|---|---|---|---|
| Nicholas Volk | 71¼ | July 17, 1928 | $10,000 |
| John Banninga | 142½ | July 17, 1928 | 20,000 |
| Samuel Mayer | 106⅞ | July 17, 1928 | 15,000 |
| A. S. Zabriskie | 71¼ | July 17, 1928 | 10,000 |
| Total | 391⅞ | | 55,000 |
| J. K. Lasser | 35⅝ | Jan. 2, 1929 | 5,000 |
| Samuel Mayer | 35⅝ | Jan. 2, 1929 | 5,000 |
| Total | 71¼ | | 10,000 |

In the separate contracts of sale for each of the sales of the preferred stock by the petitioner there was recited and incorporated by reference the agreement under which petitioner acquired the stock. These contracts referred to the fact that the purchase price of all of the stock was $322,250 and that $51,300 thereof, represented by 54 series C notes of $950 each, were given in lieu of interest on the series A notes referred to in the contract of purchase under which Macdonald purchased the stock. The total cost of the stock to the petitioner was $322,250, or $226.14 per share. The agreement between Macdonald and the purchaser, entered into as a separate agreement with each purchaser, provided as follows:

THIS AGREEMENT, made this 17th day of July, 1928, by and between GEO. S. MACDONALD, residing at 79 Sutton Manor, New Rochelle, New York, hereinafter referred to as " Macdonald " of the first part, and Samuel Mayer, residing at New York City, hereinafter referred to as the " Purchaser " of the second part, is to record the sale by Macdonald to said Purchaser of certain shares of preferred stock of the Lockwood Trade Journal Co., Inc., delivery of said shares to be made in accordance with the provisions hereof to the Purchaser by Macdonald either when all of the terms of a contract between Macdonald and one Jerome D. Maley (said contract being more fully hereinafter described) have been completed and Macdonald has become possessed of said shares, or at such other time as it is hereinafter described, this agreement being supplementary and subordinate to said contract with Maley, it being the full intent of this agreement that the Purchaser shall have no claim upon Macdonald or his estate by reason of any loss to the Purchaser other than that contingent upon the failure by Macdonald or his estate, for any reason, to pay to Maley (in the procedure more fully hereinafter described) all income received and/or earned and/or collected upon said preferred stock unless by the operation of said contract with Maley, Macdonald shall for any reason be relieved of the necessity of making such or any payments:
Now THIS AGREEMENT WITNESSETH :
WHEREAS, heretofore Macdonald has, under and according to a certain agreement dated July 10, 1928 hereto attached marked " EXHIBIT A" and made a part hereof as completely as though set forth at length, made and entered into by and between the said Macdonald and one Jerome D. Maley as Trustee,

and Harriman National Bank of New York, N. Y., as Depository purchased an aggregate of 1425 shares of preferred stock of Lockwood Trade Journal Co., Inc., a New York corporation out of a total authorized and outstanding issue of 1500 shares of said preferred stock, for and at a price of $322,250.00, payable as follows:

$62,700.00 in cash on July 10, 1928;

$128,250.00 by a series of nine (9) non-interest bearing notes, denominated "Series A" each in the sum of $14,250.00; payable as to the first thereof on January 1, 1929, and one of the remaining eight (8) thereof respectively maturing on the first day of July and January of each calendar year next thereafter ensuing, until all are fully paid;

$80,000.00 by one (1) note due January 1, 1938, denominated "Series B," with interest to begin on January 1, 1933, to be computed thereafter at the rate of six per cent (6%) per annum, such interest being payable in monthly installments of $400.00 each on the last day of each month beginning January 1, 1933;

$51,300.00 by a series of fifty-four notes (54), denominated "Series C," given in lieu of interest on the "Series A" notes above mentioned, aggregating $128,250.00; each of said series of 54 notes being in the sum of $950.00, payable as to the first thereof on July 15, 1928, one of the remaining 53 respectively being payable on the 15th day of each succeeding calendar month thereafter ensuing until all are fully paid.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Now, THEREFORE, in consideration of the premises, of the payment made by the Purchaser in the sum hereinafter stated, of the mutual promises hereinafter set forth, and of other good and valuable considerations, the receipt whereof is acknowledged, it is mutually agreed, as follows:

FIRST: Subject always to each and all of the terms and conditions of this agreement and the Maley contract dated July 10, 1928 hereinabove in the preambles hereof referred to, the Purchaser has paid Macdonald at or prior to the execution hereof $15,000.00 in full for 106⅞ shares of the 1425 shares of the aforesaid preferred stock of the Lockwood Trade Journal Co., Inc., and in consideration of said payment, Macdonald hereby sells, assigns and transfers to the Purchaser, the aforesaid number of shares, and agrees to make delivery thereof (a) when the Maley agreement hereinbefore referred to shall have been fully performed by him; or (b) in the event that prior to such full performance by him Macdonald shall have received from said Lockwood Trade Journal Co., Inc., as and for cash dividends and/or cash distribution on said shares, an amount sufficient to pay the aforesaid notes in full with interest as required by the terms of such of said notes as bear interest, then and in any such event Macdonald agrees that notwithstanding the time for delivery fixed by Clause "(a)" of this Article, he will forthwith on the receipt by him of said 1425 shares, deliver to the Purchaser the number of shares together with all increase thereof comprehended by and included in this sale, and hereinabove designated.

SECOND: It is mutually agreed that during the life of this agreement each and all of the said shares of said preferred stock sold to the Purchaser shall remain in the name of Geo. S. Macdonald on the stock books of the corporation and that all cash dividends thereon or cash distributed on account thereof shall accrue to Macdonald and be applied by him to the payment of the notes hereinabove mentioned, inclusive of the interest, if any, thereon,

and further; that Macdonald shall possess, and the Purchaser hereby for himself and his heirs, executors, administrators and assigns, hereby grants to Macdonald the right at any time to sell all of said preferred stock, (including any and all stock that may hereafter be received by him as a result of any stock dividend declared by said Lockwood Trade Journal Co., Inc.) at and for such price and upon such terms as he may in his sole and uncontrolled discretion deem suitable, applying the proceeds thereof to the payment of all or any one or more of said notes in accordance with the terms thereof and/or as may be permitted thereby or by the holder thereof; and to exercise, in person or by proxy, all voting rights on any and all shares of stock at any time held by him hereunder, in such manner as he (or his proxy, whenever he shall delegate the power to vote the same to another) shall in his (or his proxy's) sole and uncontrolled discretion deem wise, and to execute as the holder of record thereof all such waivers, consents, legal documents and papers as he may approve, and that said agreement dated July 10, 1928 may permit, for any and all corporate purposes and objects, of whatsoever nature and description, provided always that it is of the essence of this agreement, and Macdonald hereby agrees that no lien or pledge of that portion of the 1425 shares of said preferred stock hereby sold to the Purchaser, including all increase thereof and all rights thereto appertaining, shall at any time be made, permitted, or suffered by him for any reason whatsoever (other than the above mentioned agreement dated July 10, 1928, and the escrow therein mentioned) ; and provided further that if said 1425 shares of said preferred stock and the increase thereof, and all rights thereto appertaining (except cash dividends and/or cash distributions) shall be sold or otherwise disposed of, Macdonald hereby specifically agrees to pay the Purchaser, and the Purchaser hereby agrees to accept in full payment and discharge of all liability of Macdonald to him under this agreement, the greater of the following sums:

(a) The amount hereinabove in article numbered " First " hereof designated, paid by the Purchaser to Macdonald, together with interest thereon from the date hereof at the rate of six per cent (6%) per annum to the date of payment.

(b) An amount equal to 7½ per cent (7½%) of the net proceeds realized by Macdonald from the sale or other disposition of said shares of said preferred stock and the increase thereof and all rights thereto appertaining and remaining after deducting from said proceeds an amount equal to all moneys due and unpaid, or thereafter to grow due on the aforesaid notes together with interest to the date of payment, in accordance with the terms thereof.

\*        \*        \*        \*        \*        \*        \*

Fourth: Macdonald agrees that if and whenever he shall for any reason be or become apprehensive that he may suffer or be compelled to suffer default in respect of the payments of any one of the aforesaid notes, he will forthwith advise the Purchaser of the possibility of such default by word of mouth, telephone or telegraph or by mailing to the Purchaser by registered mail, postage prepaid, a letter addressed to the Purchaser at his address as hereinabove stated, a notice stating the date fixed for payment, the total amount of money required to be paid, the amount of the Purchaser's pro-rata share of such payment, and will call a meeting of the Purchaser and such other Purchasers if any, with whom Macdonald may have made contracts similar to this, to convene on a day and at an hour designated in such notice, at the office of said Lockwood Trade Journal Co., Inc. in the Borough of Manhattan, City, County and State of New York, for the purpose of considering the requirements of the situation. In each and every such case Macdonald agrees in good faith to co-operate with the Purchaser to avoid the incidence of

such default; and hereby authorizes and empowers the Purchaser or Purchasers in each and every such case, either jointly or such one or more of them as so elect, or their respective nominees and agents to pay, (though they shall be under no obligation to do so) as and when the same matures, the note about to be defaulted upon, and to pay Macdonald, or any other person designated by them, additional moneys to be applied to the due and timely payment thereof, to the end that there may be no default, and/or to conduct such negotiations and to make such provisions as may be necessary or in their opinion best calculated to avoid the incidence of such default. In any case, and whenever, and if from time to time, some one or more of said Purchasers shall desire to avoid the incidence of any default and others shall not so desire, then it is mutually agreed by and between Macdonald and the Purchaser that those desiring and electing to avoid default shall in such case possess and they are hereby accorded the right (though they shall be under no obligation so to do) to advance additional moneys and to pay, as and when the note then about to become due matures, and that in every such instance, upon making such payment as may be immediately required in order to avoid default, the proportionate interest of such Purchaser who in such event shall so elect and shall advance additional moneys hereunder, shall in each and every such case be increased in the aforesaid 1425 shares of said preferred stock and the increase thereof, in the proportion that the aggregate of such additional payments so made by any Purchaser shall bear to the total purchase price paid by Macdonald for the said 1425 shares, including interest, if any, paid thereon; and neither Macdonald nor such Purchaser shall in any such event thereby or hereby incur any liability of any nature whatsoever; nor shall the Purchaser in any instance from time to time not so electing, thereby incur to any other purchasers or to Macdonald or to anyone else, and he hereby expressly releases and remises those in every such case advancing additional moneys from all such liability, but without prejudice nevertheless, to their respective rights to participate in the benefits of this joint venture to the extent of their several and proportionate rights theretofore acquired herein, or to increase their participation herein by advancing additional moneys in the event of any threatened default which may, from time to time, subsequently occur.

\* \* \* \* \* \* \*

SIXTH: In the event that Macdonald shall elect to pay that proportion of the balance of entire sum of $322,250.00 (with interest thereon) to Jerome D. Maley at any time, it is mutually understood and agreed that the date of delivery of the stock to the Purchaser shall not thereby be accelerated (1) unless and except the purchaser shall participate in any measures taken to avoid default, as provided in article " Fourth " hereof, in which event said date of delivery shall be thereby accelerated to any date when the purchase price provided by the aforesaid agreement dated July 10th, 1928, shall have been fully paid, and (2) except as otherwise provided in subdivision "(b)" of article " First " hereof.

\* \* \* \* \* \* \*

TWELFTH: It is mutually agreed that separate counterparts of this agreement shall be executed and delivered by Macdonald to other Purchasers of parts of the aforesaid 1425 shares of the Preferred Stock of the Lockwood Trade Journal Co., Inc. and it is mutually agreed that said counterparts taken together shall constitute but one and the same instrument with the same form and effect as though each had been signed by Macdonald and each of said purchasers. And the Purchaser by the execution and delivery hereof mutually agrees with Macdonald and with the remaining Purchasers if any, that in any case where

Macdonald shall seek, or desire or possess the right to be under any obligation by any of the provisions of this agreement to demand any determination or counsel of said Purchaser, that he, the said Purchaser will observe and be bound by the determination, wishes and resolves of a majority of such of the Purchasers as participate therein; and, further that in any such event, where and whenever the participating Purchasers shall be equally divided on a per share basis or in opinion, Macdonald's view shall be final and conclusive and binding on all of the purchasers jointly and severally.

The first question is whether the purchase price of these 1,425 shares of stock was $322,250, or that amount less the series C notes of $51,300. The contract of sale, which was on an installment basis, referred to the purchase price as being $322,250 and stated how that purchase price should be paid. While there was some testimony to the effect that the $51,300 was interest, we can not accept this testimony as changing the written instrument executed by the parties.

In the case of *Daniel Brothers Co.*, 7 B.T.A. 1086, we had somewhat the same question before us. In that case the petitioner contended that each of certain monthly payments made on the purchase price of the property should be considered as including interest. In that case we said:

The same question here presented was considered by this Board in *Appeal of Marsh & Marsh, Inc.*, 5 B.T.A. 902, and *Appeal of Anderson & Co.*, 6 B.T.A. 713, in which it was held that where sales are made on the deferred payment plan, interest not being provided for in the contract of sale, no part of the deferred payment will be considered as interest.

The Circuit Court of Appeals for the Fifth Circuit, in affirming our decision (28 Fed. (2d) 761), said:

Under the transaction between the petitioner and the seller of the property dealt with petitioner did not receive or have the use of any money of the seller prior to an installment of the price becoming due. Petitioner's promise to pay stated installments of the purchase price were not promises to pay money which the seller owned or would be entitled to prior to the installments becoming payable. Before the installments were payable petitioner did not use or withhold any money to which the seller was entitled. An obligation to pay the agreed price of property in installments falling due in the future can not properly be regarded as including an obligation to pay interest. There would be an obvious lack of plausibility in a contention that in the case of any contract of sale under which the agreed price is payable, not when the sale takes effect but thereafter, the buyer's compliance with his obligation to pay the agreed price involves the payment of interest. To sustain such a contention would amount to saying that under the quoted provision of .the statute every credit purchase of property by the taxpayer gives rise to a right to a deduction for interest paid or accrued, on the theory that the credit price includes what the cash price would have been and interest on the amount of the cash price.

In the case of *Henrietta Mills, Inc.*, 20 B.T.A. 651, the taxpayer contended that the excess over the price immediately payable for

the stock and the price agreed to be paid and actually paid at a future date represented interest. We adhered to our previous decision and held that no part of the purchase price represented interest. No interest was provided for in the contract. The Circuit Court of Appeals for the Fourth Circuit, in affirming our decision (52 Fed. (2d) 931), said:

It is contended by the petitioner that the purchase price of all the stock was $650 per share as of April 1, 1920, and that the total purchase price was to be paid in four installments, and that the excess of the later over the first price amounted to what would have been 6 per cent. interest and was in fact interest. It is further contended on behalf of the petitioner that to give the contract any other interpretation would be illogical and utterly ridiculous from a business standpoint.

We cannot agree with petitioner's contention. The courts will not disregard the plain language of a contract or interpolate something not contained in it. Here the language used by the parties is clear and unambiguous, and cannot be ignored however plausible the reasons advanced. The courts will not write contracts for the parties to them nor construe them other than in accordance with the plain and literal meaning of the language used. * * *

The fact that the later installments exceeded the first by amounts that equaled 6 per cent. does not of itself prove that the excess was interest. In this transaction there was no element of lending or borrowing, and the excess price paid for the stock later purchased is not to be considered interest but all principal. *In re Bibbey* (D.C.) 9 F. (2d) 944, and cases there cited.

\* \* \* \* \* \* \*

Tax liabilities must be determined by what in fact was done. In this case the contract of sale made no reference to interest payments, but recited the fact that $322,250 was the purchase price for the stock. We do not believe that the oral testimony to the effect that $51,300 of the total purchase price represented interest should have the effect of overcoming the purchase price mutually agreed upon in the contract.

The next question is, Did he sell it? In determining this question we must consider the contract of sale made by the petitioner with his vendees. One of the contracts was set out in evidence as being typical of all the other contracts of sale. It contained the same provisions except the name of the purchaser and the number of shares and purchase price. The contracts of sale between Macdonald and his purchasers recite the payment in full of the consideration payable by the purchaser, and also contain the statement " hereby sells, assigns and transfers to the purchaser " the number of shares included in the particular contract.

We must analyze the contract as a whole and determine what the real transaction was instead of taking any particular expression in it. We find that the contracts Macdonald made with his purchasers incorporated by reference the contract which he had with Maley, under which he acquired the stock, and in addition thereto

referred specifically to certain provisions of that contract. Macdonald's contract with his purchasers was dependent upon carrying out his contract with Maley. The contract with Maley provided that certain payments were to be made at certain stated times. All of the stock acquired by the petitioner under the Maley contract was deposited in escrow as security and to assure the carrying out of that contract by petitioner. Macdonald's contract with his purchaser was contingent and conditional upon his carrying out the contract with Maley. In addition to this contingent and conditional provision, Macdonald retained the title to the stock, with all the rights of ownership thereof. He could sell it to others if he desired. He retained the dividends on it. He had all the voting rights. If he had seen fit to sell it to others, as he had the unlimited discretion to do, he could have done so. If Macdonald had sold the stock to others he could have discharged his full liability to his purchasers by paying the greater of the following sums: The amount paid by the purchaser to Macdonald with interest at 6 percent, or the amount equal to 7½ percent of the net proceeds realized by Macdonald from the sale or other disposition of the shares and the increase thereof and all rights thereto appertaining and remaining after taking over said proceeds, an amount equal to all moneys due and unpaid or thereafter to become due on the notes referred to, together with interest to date of payment.

In the event Macdonald should not complete his payments to Maley in accordance with the terms of his contract, or was apprehensive that he could not meet such payments, his purchasers were given the right to participate in the payments to be made by Macdonald to his vendor for the purpose of preventing default. If they did so they were entitled to the pro rata share of other stock included within the 1,425 shares involved in the Macdonald contract. Paragraph fourth refers to the respective rights of Macdonald's purchasers to participate in the benefits of this "joint venture to the extent of their several and proportionate rights theretofore acquired herein, or to increase their participation herein by advancing additional moneys in the event of any threatened default which may, from time to time, subsequently occur."

We think, considering all the facts in the case, that Macdonald did not sell to his so-called purchasers the stocks herein referred to other than contingently and conditionally. His purchasers were more in the nature of participants in a joint venture with him and consequently he is not entitled to deduct any loss connected with the so-called sales by him of portions of the 1,425 shares of preferred stock acquired by him. There was no delivery of the stock to his purchasers, either actually or constructively.

In any event, even if it should be conceded for the sake of argument that Macdonald did make sales of the stock, the purchase price received by him would be the amount paid by the so-called purchaser plus the dividends over the period of the Maley contract. See *Albert Russel Erskine*, 26 B.T.A. 147.

The memorandum opinion in this proceeding, entered under date of April 13, 1934, is modified by certain verbal changes, as set forth herein.

Reviewed by the Board.

> *Judgment will be entered under Rule 50.*

Leech concurs in the result.