Strange Bros. Hide Company v. Commissioner.
Strange Bros. Hide Co. v. Commissioner
Docket Nos. 110162, 110163.
United States Tax Court
1943 Tax Ct. Memo LEXIS 5; 2 T.C.M. (CCH) 1194; T.C.M. (RIA) 43539; December 31, 1943
*5 J. M. Gunnell, Esq., 329 Insurance Exchange Bldg., Sioux City, Ia., for the petitioner. Richard A. Jennings, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: These consolidated proceedings involve the following deficiencies in income tax: Docket No.
Fiscal Year
Amount
110162
Ended Sept. 30, 1938
$253.90
110163
Ended Sept. 30, 1939
232.50
110163
Ended Sept. 30, 1940
258.84
They were submitted upon a stipulation of facts, all of which are found. The sole issue is whether respondent erred in disallowing deductions claimed as interest paid - $1,800 in the first taxable year and $1,860 in each of the other two taxable years. [The Facts] Petitioner is an Iowa corporation located at Third and Water Streets, Sioux City, Iowa. It is engaged in the business of selling hides, wools and furs. Its books are kept on the accrual basis and its income tax returns are filed on a fiscal year basis ending September 30th. Its returns for the taxable years were filed with the collector of internal revenue at Des Moines, Iowa. Petitioner had only one class of stock (common) outstanding. Prior to 1935 this stock was held by Fred Strange, Sr., and Charles C. *6 Strange. On January 1, 1935, Charles C. Strange owned one-third of the petitioner's stock. He was seriously ill from cancer and his death was expected at an early date. He was married to Eunice P. Strange and had one child, Harriet Jane Strange. On or about January 14, 1935, Charles C. Strange and his wife entered into the following agreement with the petitioner, Strange Realty Company and Keith Strange: Sioux City, Iowa. January 14, 1935. TO WHOM IT MAY CONCERN Strange Bros. Hide Co., herewith agrees to pay to Eunice Perrin Strange, or in event of her death to Harriet Jane Strange or Guardian $150.00 per month until such time as real estate owned by Strange Bros. Hide Co. and Strange Realty Co., is sold, at which time proceeds of such sale shall be divided between Eunice Perrin Strange and Strange Bros. Hide Co., in the proportion of Eunice Strange one-third, Strange Bros. Hide Co. two-thirds, said Strange Bros. Hide Co., shall then pay to Eunice Perrin Strange the sum of $9,075.05 to be paid in monthly installments of $150.00, at this time previous monthly payments of $150.00 shall be discontinued. It is hereby agreed that no claims shall be made other than the above by any *7 of the signatories hereto, and the terms hereof are satisfactory and will be carried out fully by all concerned. This agreement is a part of and subject to bill of sale and deed made on this date. (Signed) Charles C. Strange Eunice P. Strange The $9,075.05 being for C. C. Strange interest in all stock and personal property in Strange Bros. Hide Co., and Strange Realty Co. which of the real estate includes only tax lots F.N.O.P. of Auditor's Plat of blocks 31, 85 and 86 of Sioux City east addition to Sioux City, Iowa. Eunice P. Strange (Signed) Strange Bros. Hide Co. By Fred Strange, Pres. Strange Realty Co. By Fred Strange, Tr., Keith Strange State of Iowa
Woodbury County]ss. On this 5th day of February, 1935, before me Martin Neilan, a Notary Public in and for Woodbury County, State of Iowa, personally appeared Eunice P. Strange, to be known to be the identical person named in and who executed the foregoing instrument and with Strange Bros. Hide Co. and Strange Realty Co. and acknowledged that she executed the same as her voluntary act and deed. Witness my official signature and seal of office at Sioux City, Iowa the day and year last above written. (Signed) Martin Neilan, *8 Notary Public in and for Woodbury County, Iowa. Charles C. Strange died on or about January 15, 1935. Under date of October 1, 1935, an entry was made on the books of petitioner crediting Eunice P. Strange with $36,712.63, which amount was determined as follows: Debit
Credit
Treasury stock
$33,300.00
Surplus
5,912.63
Mortgage payable
$ 2,500.00
Mrs. Chas. C. Strange
36,712.63
Purchase of capital stock of
the Strange Brothers Hide
Company from Chas. C.
Strange per agreement
dated January 14, 1935,
made up as follows: Manhattan Realty Co.
86,774.56
Dale Street property
342.29
Lot 4 Block 8
1,413.20
Lot 9 Block 2
1,118.04
Lot 6 Block 4
764.65
90,412.74
1/3 Interest
30,137.58
Estimated value of stock,
not including above real
estate, at date of agree-
ment
9,075.05
39,212.63
Less mortgage on home of
Chas. C. Strange assumed
by Strange Brothers Hide
Company
2,500.00
Balance due Mrs. Chas. C.
Strange
$36,712.63
On October 1, 1938, the petitioner, Fred Strange, Sr., and his son Keith Strange entered into an agreement with Eunice P. Strange which recited, in part: WHEREAS, a memorandum agreement was entered into on the 14th day of January, 1935, by and *9 between the above parties, whereby the Strange Bros. Hide Company, a corporation, purchased of Eunice P. Strange and Charles C. Strange, her husband, then living, all of their right, title and interest in and to the real estate and other assets of the said Strange Bros. Hide Company; and WHEREAS, said memorandum of agreement is vague and ambiguous and does not clearly set forth the true conditions of said agreement; and WHEREAS, the Party of the Second Part has turned over and surrendered to the Strange Bros. Hide Company all certificates of stock in the Strange Bros. Hide Company, a corporation representing whatever interest she or her husband, Charles C. Strange, had or may have in and to the assets of the said Strange Bros. Hide Company; NOW, THEREFORE, in consideration of One Dollar and other valuable consideration in hand paid, receipt of which is hereby acknowledged, it is mutually agreed as follows: 1. The Parties of the First Part agree to pay to the said Eunice Perrin Strange, or, in the event of her death, to Harriet Jane Strange, or guardian, One Hundred Fifty-five Dollars ($155.00) per month, as interest for the use of the interests of the said Eunice Perrin Strange *10 in and to the real estate owned by Strange Bros. Hide Company, until said real estate has been sold, at which time there shall be paid to the said Eunice Perrin Strange out of the proceeds of such sale an amount equal to one-third of the net sale price of said real estate, and thereupon said monthly payments of $155.00 per month shall cease. 2. IT IS FURTHER MUTUALLY AGREED that at the time of said sale and distribution, the said Strange Bros. Hide Company shall pay to the said Eunice Perrin Strange, as a consideration for her interests in and to the personal property of the said Strange Bros. Hide Company, the sum of Nine Thousand Seventy-five and 05/100 Dollars ($9,075.05), to be paid in monthly installments of One Hundred Fifty Dollars ($150.00) per month, until the entire sum has been paid. This amount shall be in lieu of any other monthly payments. 3. It is mutually agreed that this agreement shall be in lieu of and take the place of the memorandum agreement of January 14, 1935, and that no claim shall be made other than the above by any of the signers hereto. On July 29, 1940, the agreement of January 14, 1935, as clarified by the agreement of October 1, 1938, was further *11 modified as follows: WHEREAS, a memorandum agreement was entered into on the 14th day of January, 1935, by and between the above parties and a similar agreement clarifying same was executed on the 1st day of October, 1938, between said parties, all relative to the interests of Eunice Perrin Strange and Charles C. Strange in and to the said Strange Brothers Hide Company, a corporation, and WHEREAS, it is the desire of the parties to this agreement to provide for termination of said agreement in the event of the death of Eunice Perrin Strange and Harriet Strange, NOW, THEREFORE, in consideration of one dollar and other valuable considerations, and the covenants and agreements hereinafter entered into, it is mutually agreed as follows: 1. It is specifically agreed by the party of the Second Part, that in the event that the said Eunice Perrin Strange and the said Harriet Strange shall die, without the said Harriet Strange leaving any children, then, and in that event, all payments under said contracts above designated shall cease and determine, and the said Parties of the First Part shall not be obligated to make any further payments under said agreements and all interest of the said *12 Eunice Perrin Strange and of Harriet Strange in and to said agreements shall terminate in favor of the Strange Brothers Hide Co. The payments to Eunice P. Strange (Mrs. Charles C. Strange) were entered and were charged to her account on petitioner's books as paid to her; but such payments were not charged against the credit of $36,712.63, during the fiscal years ended September 30, 1938, and 1939. The respondent determined that the payments made by petitioner to Eunice P. Strange were not deductible, since they were "neither interest on indebtedness nor ordinary and necessary expenses." He contends they were capital expenditures in the nature of deferred payments on the sale by Charles C. Strange of his stock. Petitioner contends that the payments represented interest paid by it on the value of the stock purchased from Charles C. Strange and that they are deductible in computing its net income. It points out that the amount set up on its books as the approximate value of the stock and credited to the account of Eunice P. Strange was not diminished by the payments made to her monthly; that the original agreement of January 14, 1935, was vague and ambiguous, and that the amended *13 agreement of October 1, 1938, which specifically characterized the payments as interest, was made to clarify the original agreement and to set out the real intention of the parties. [Opinion] All of the stipulated facts have been set out except such as may be gleaned from the returns. By Paragraphs 12 to 16 inclusive of the stipulation photostatic copies of petitioner's income tax returns for the fiscal years ended September 30, 1935, 1936, 1937, 1938, 1939 and 1940 were attached "and made a part thereof." Although neither party has discussed the returns we shall have occasion to refer briefly to some of them. Several queries are naturally suggested. Was a bill of sale or a deed executed and delivered as indicated in the concluding sentence of the agreement of January 14, 1935? If so, why was either document necessary and what did it convey? Were any shares of stock delivered? Why was the agreement signed by the Strange Realty Co. and just what interest, if any, did it have? Just what is the meaning and significance of the journal entry set out above? Did petitioner actually become the owner of the stock of Charles C. Strange on January 14, 1935 or was it owned by him at the *14 time of his death? What effect, if any, did the execution of the second agreement (October 1, 1938) have? The answers to some of these questions cannot be readily gleaned from the record; but if the statements in the returns are considered the following emerge. The Strange Realty Company appears to have been a subsidiary or affiliated corporation. Thus in the balance sheet attached to the return for the fiscal year ending September 30, 1935 its stock ($25,000) is shown as an asset while in "Other Liabilities", following the interpolated words "Strange Realty Co." the amount of $53,686.46 is shown. Substantially the same figures are shown in the balance sheet attached to the return for the fiscal year ending September 30, 1936. The return for the fiscal year ending September 30, 1937 indicates that the realty company was dissolved, though we make no finding to that effect. The existence of this company on January 14, 1935 may have made it seem to be desirable to have it sign the agreement executed by petitioner and some of its stockholders on that date; but in our judgment its signature was nugatory. Whether a bill of sale or deed was executed on January 14, 1935, cannot be determined; *15 but as we view it neither was necessary. The real estate and personal property of the corporation belonged to it. Apparently, both on January 14, 1935 and on October 1, 1938 when the second agreement was executed, the parties were laboring under the misapprehension that a stockholder, as such, has some "interests" in the real estate and personal property owned by a corporation. A corporation is an entity, separate and apart from its stockholders, and capable of owning property. The "interests" of the stockholders are represented by stock, which entitles them to dividends, to manage the corporation through electing directors, and to share in its property upon dissolution. Stock may be bought and sold like any other property; and no bill of sale or deed for the property owned by the corporation is necessary to transfer the interests of the stockholders in it. It is important, however, to ascertain whether the corporation became the owner of the stock formerly owned by Charles C. Strange. The stock itself or the books of the company, neither of which has been produced, would be the best evidence. Shall petitioner be denied the claimed deduction because the best evidence has not been *16 adduced? We think not, if from the whole record it is reasonable to conclude that title to the stock actually passed. Charles C. Strange and his wife, we believe, actually intended to pass title to the stock to petitioner and it intended to acquire the stock. While the language used was inept, it is significant that Strange and his wife agreed that no claims, other than to the money specified, should be made, that "the terms hereof are satisfactory" and that they would "be carried out fully by all concerned." It may be assumed, we think, notwithstanding the misconceptions of the parties in some respects, that they realized the corporation was not, and could not be, required to pay the stockholders for the use of its property. They therefore tried to couch the agreement in terms of a sale, allocating $9,075.05 to C. C. Strange's "interest in all stock and personal property," at the same time having the corporation pay " $150 per month until such time as the real estate * * * is sold, at which time proceeds of such sale shall be divided * * * Eunice Strange one-third and Strange Brothers two-thirds." When this agreement is considered in connection with the journal entry crediting to *17 her $36,712.63, $30,137.38 of which was allocated to her assumed 1/3 Interest in the real estate, it seems to be clear that the real agreement of the parties was that the stock should be transferred for a total consideration of $9,075.05 plus an agreement to pay over to Eunice one-third of the sale price of the real estate, the estimated value of which was approximately $90,000. We are conscious of the fact that the stipulation does not specifically state that the stock was actually transferred to petitioner. In the agreement of October 1, 1938, it is recited, however, that "Party of the Second Part has turned over and surrendered to the Strange Bros. Hide Company all certificates of stock in the Strange Bros. Hide Company"; and the return of the corporation for the fiscal year ended September 30, 1936 bears that out. Thus in Schedule L "Reconciliation of Net Income and Analysis of Changes in Surplus" a charge against surplus in the amount of $5,912.63 is shown with the explanation "Loss on Capital Stock purchased from Chas. Strange." The return was made on December 15, 1936, apparently before any controversy had arisen between petitioner and respondent as to the interpretation of *18 the contract. Under the circumstances we think it supports the conclusion we now reach that the stock was transferred to petitioner under a contract interpreted by the parties to be a contract of sale. We pass, then, to a consideration of the question discussed by the parties upon brief. Respondent says: "Since there is no provision for interest payment under the terms of the agreement [of January 14, 1935], no part of the payments made thereunder can be considered as payments of interest." He cites Marsh & Marsh, Inc., 5 B.T.A. 902; Anderson & Co., 6 B.T.A. 713; Daniel Brothers Co., 7 B.T.A. 1086, affd. 28 Fed. (2d) 761; George D. MacDonald, 30 B.T.A. 884, affd. 76 Fed. (2d) 513, and Henrietta Mills Inc. v. Commissioner, 52 Fed. (2d) 931. The rationale of the first four cases is apparent from the following quotation from the last (the MacDonald) case: In the case of Daniel Brothers Co., 7 B.T.A. 1086, we had somewhat the same question *19 before us. In that case the petitioner contended that each of certain monthly payments made on the purchase price of the property should be considered as including interest. In that case we said: The same question here presented was considered by this Board in Appeal of Marsh & Marsh, Inc., 5 B.T.A. 902, and Appeal of Anderson & Co., 6 B.T.A. 713, in which it was held that where sales are made on the deferred payment plan, interest not being provided for in the contract of sale, no part of the deferred payment will be considered as interest. The same question was before the court in Henrietta Mills, Inc. v. Commissioner. The cited cases would be applicable if under the agreement of January 14, 1935 the payments of $150 per month were being made upon the purchase price of property; but we do not so construe it. As indicated above we think the reasonable interpretation of the contract, when examined in the light of subsequent developments, including the transfer of the stock to petitioner and the execution of the agreement of October 1, 1938, is that petitioner became the owner of the stock on January 14, 1935, subject *20 to the payment of $9,075.05 and the payment of one-third of the amount for which the real estate should be sold, the aggregate amount of which was estimated to be $39,212.63. $2,500 of this amount was paid by the assumption of the mortgage on the Charles C. Strange home, leaving a "Balance due Mrs. Chas. C. Strange" of $36,712.63. (Incidentally it may be pointed out that this amount is slightly more than one-third of the book value of the stock as indicated by the balance sheet of the company at the close of its fiscal year September 30, 1935.) $150 per month or $1,800 per year is slightly less than 5 per centum per annum on a debt of $36,712.63 while $1,860 per annum is slightly more than 5 per centum per annum. This, together with the fact that the payments made did not reduce the credit set up on the books of the company to Mrs. Chas. C. (Eunice P.) Strange, impels us to conclude that the payments were actually interest notwithstanding the fact that they were not specifically so characterized in the contract. The statute makes no requirement that interest be denominated as such in a contract. All that is required is that interest be "paid or accrued within the taxable year on *21 indebtedness." (Sec. 23 (b), I.R.C. and the various Revenue Acts). The payments made during the taxable years prior to July 29, 1940, we think, are clearly within that category. The agreement of July 29, 1940 materially changes the picture. It provides for a "termination" of the prior agreement, substituting therefor a proviso that payments shall cease in the event Eunice P. Strange and her daughter Harriet shall die "without the said Harriet Strange leaving any children." No indebtedness therefore existed after that date and no interest "on indebtedness" was thereafter paid or accrued. The payments made under this contract were capital expenditures and not deductible in computing net income. Cf. Edwin M. Klein et al., 31 B.T.A. 910, affd., Klein v. Commissioner, 84 Fed. (2d) 310. Decision will be entered for the petitioner in Docket No. 110162. Decision will be entered under Rule 50 in Docket No. 110163.