## HOGG *vs.* RUFFNER.

1. To constitute usury there must either be a loan upon usurious interest, or the taking of more than legal interest, for the forbearance of a debt or sum of money due. This is the common law definition of the term, and the statute of Indiana does not enlarge it.

2. Where a sum of money is due on a contract for the sale of land, and the vendor takes more than legal interest for the forbearance of the debt, it is usury.

3. But where the owner of land proposes to sell it for one price in cash, and for another price, double as large, on a long credit, and a pur- chaser prefers to pay the larger price for the sake of the longer time, the contract cannot be called usurious.

Cross-appeal, from the decree of the District Court of the United States for the district of Indiana.

Nathaniel B. Hogg brought his bill in the Circuit Court against Benjamin Ruffner and several other defendants, who were collaterally interested. The bill avers that Ruffner made

his nineteen promissory notes, for two thousand dollars each, amounting in all to thirty-eight thousand dollars, payable to the order of John W. Brice and James L. Birkey, with interest from their date, and that these notes were delivered to Brice and Birkey; that in order to secure the payment of the notes, Ruffner executed three mortgages to Brice and Birkey, and that some of the notes and so much of the mortgages as secured them were assigned to the plaintiff. The bill prays for a decree against the defendant that he pay the sum due upon the notes, and in default thereof that the mortgaged premises be sold. The notes were to become due as follows: two on January 1, 1856, and two on the 1st of April in each of the years 1857, 1858, 1859, 1860, 1861, 1862, 1863, 1864, 1865.

The answer of Ruffner is, that the notes and mortgages were given on a contract usurious and corrupt. He was in debt (as he asserts) in the sum of twenty thousand dollars to Brice and Birkey, who took these nineteen notes for two thousand dollars each, with interest, payable as stated in the bill; that he, the defendant, gave the notes and mortgages solely for the debt of twenty thousand dollars, and being much embarrassed and pressed for money, and seeing no other means to prevent the sacrifice of his property by an oppressive and inexorable creditor, agreed to the corrupt and usurious contract, and gave his notes for the extra sum of eighteen thousand dollars for the forbearance of the twenty thousand which were due.

The true character of the contract as proved in the Circuit Court will be found stated in the opinion of Mr. Justice Grier

The Circuit Court held the notes which were due and to become due in the years 1861, 1862, 1863, 1864, and 1865, and which were given for the eighteen thousand dollars, to be usurious and void, and the remainder of the notes valid, as covering only the debt justly owing to the parties by whom they were taken. The court accordingly decreed payment of the notes which were already due, *with interest and costs.* From this decree both parties appealed.

*Mr. Stanton* and *Mr. Phillips,* of Washington city, for the

defendant, contended that the decree of the Circuit Court was erroneous, because: 1st, it includes interest and costs; and, 2d, instead of taking the usury *pro rata* from all the notes, it takes the whole from the last of the series. The law of Indiana governs the case. The statute of that State provides that six per cent. shall be the legal interest, and if more is taken the contract shall not therefore be void; but if in an action on such contract it is proved to be usurious, the defendant shall recover costs, and the plaintiff shall recover only his principal, without interest. 1 Rev. Stat. of Ind., 343. If the last notes were usurious, it is difficult to see how the first could be free from the taint. It would seem upon principle that each note of the series must be infected with its share of the poison, and so are all the authorities. Parson on Cont., 390; *Merritts* vs. *Law*, (9 Cowan, 65;) *Hammond* vs. *Howard*, (13 Johns.;) *Willard* vs. *Reeder*, (2 McCord, 369;) *Lacomic Bank* vs. *Johnson*, (31 Maine, 414.)

*Mr. Hunter*, of Ohio, for the complainant, insisted that the decree of the court awarding interest and costs to the complainant was not erroneous, even on the assumption that the contract was usurious. It is not affected by the statute of Indiana, for it is not alleged in the answer that the contract was made in that State, and by the common law a negotiable note in the hands of a bona fide holders, cannot be avoided for usury. Ang. & Ames on Corp., §-262; *Seneca Co. Bank* vs. *Nafs*, (5 Den., 330;) *White* vs. *How*, (3 M. L., 291.) The rule in England under the statute 12 Anne, c. 16, which declares all usurious *securities* to be void, is, that a note given on a usurious contract for the forbearance of a pre-existing debt is void, but the debt is not extinguished. Cro. Eliz., 20; 3 Campb., 119; 10 B. & C., 679. *A fortiori* such must be the rule in Indiana, where the statute expressly provides that the usurious contract itself shall not be void.

But it is utterly denied that any usurious contract was made between the parties, or that the written agreement referred to in the answer was a device to conceal usury. While the de-

fendant has no claim to a reversal of the decree for such reasons as he has given; the plaintiff, who also appeals, has a right to complain and does complain of the error which the court below committed in pronouncing a part of the notes to be void. There is no taint of usury about the contract on which they were made. The written contract repels every such presumption, and so does the other evidence in the cause.

Mr. Justice GRIER. If the exception taken to the decree of the court below by the complainant be sustained, it will be unnecessary to notice those taken by the respondents.

Was the contract of Brice and Birkey with Ruffner, which shows the consideration of the mortgage and notes assigned to the complainants, usurious?

The statute of Indiana declares, that "the rate of interest upon the loan or for the forbearance of any money, &c., shall be at the rate of six" per cent.; but "if a greater rate of interest shall be contracted for, received, or reserved, the contract shall not, therefore, be void;" "the plaintiff shall recover only his principal, without interest," and the "defendant shall recover costs."

To constitute usury, there must either be a loan and a taking of usurious interest, or the taking of more than legal interest for the forbearance of a debt or sum of money due. This statute does not profess to enlarge the common law definition of the term, while it aims to include the common devices resorted to by usurers to evade its penalties.

The original contract by which a debt is created may be for the purchase and sale of land, and it will be, nevertheless, contrary to the statute for the vendor to demand or receive more than legal interest for the forbearance of such debt, as in the case of *Crawford* vs. *Johnson*, (11 Indiana Reports, 258,) where separate notes were taken for two per cent. interest, in addition to the legal interest, on the sum due for the purchase money of land.

But it is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000 payable in ten annual

instalments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand to double the sum in expectancy, and a purchaser may prefer the greater price with the longer credit; and one who will not distinguish between things that differ, may say, with apparent truth, that B pays a hundred per cent for forbearance, and may assert that such a contract is usurious; but whatever truth there may be in the premises, the conclusion is manifestly erroneous. Such a contract has none of the characteristics of usury; it is not for the loan of money, or forbearance of a debt.

Does this case come within this category? We are of opinion that it does.

The mortgage and notes in question were given in execution of a contract between the parties, dated the 20th of April, 1855. This contract is in writing, and signed by the parties. It would be tedious and unprofitable to enumerate its various covenants; but the chief subject of it is a sale of land by Brice and Birkey to Ruffner for the sum of $38,000, in ten annual instalments, the sale to include, also, certain personal property. There is no proof that the recitals of this contract are untrue, or that the consideration of the notes and mortgage in question was other than is there stated. These parties had formed a partnership in February, 1854, "for dealing in land, farming," &c., &c. Brice and Birkey advanced money, and had each an interest of one-third in the lands whose title was in the name of Ruffner. In October of the same year this partnership was dissolved, and Ruffner afterwards agreed to pay certain sums of money to the other parties for a release of their interest in the land, and gave them his obligations. Afterwards, in February, 1855, in order to extinguish these obligations, which he was unable to meet, he agreed to reconvey to Brice and Birkey certain tracts of the land. In the spring of 1855 they made arrangements to take possession of these lands, with their tenants, stock, farming utensils, &c., &c. Ruffner then refused to let them have possession. Finding they could not obtain possession without great and ruinous delay,

a proposition was made to sell or release all their interest in the lands of the firm, if Ruffner would pay in cash the amount of money advanced by them. After some negotiations and calculations, this amount was ascertained to be about twenty thousand dollars. They professed a willingness to receive this amount, if paid in cash, or security given that it should be actually paid in six months. A conditional deed was proposed, by which the title was to become absolute in case payment was not made on the day. But counsel advised that this would be construed a mortgage, in whatever form of words it might be drawn. Ruffner being unable to furnish such security as was required, this agreement was not signed or executed. Proposals were then made to purchase for a larger consideration, to include the farming stock, &c., owned by Brice and Birkey, on a credit running ten years. On these terms they demanded forty thousand dollars, and Ruffner offered thirty-six thousand, and finally the amount of thirty-eight thousand was agreed upon, as set forth in the contract referred to.

Now the hearsay testimony of witnesses, who relate what they "*understood*" from conversations with the parties, or may have misunderstood to be the contract between them, and their inference, because the parties had a "*settlement,*" that therefore the first terms proposed, but not accepted, amounted to the ascertainment of a debt due, cannot be received to contradict the written contract of the parties and the testimony of witnesses cognizant of the whole antecedent history of the transaction. Nor is there any irreconcilable discrepancy between their impressions or "understandings," and the written agreements and other testimony. They construed the "*settlement*" of the difficulties, which had long existed between the parties, to mean a balance of accounts of money due from one party to the other, and consequently inferred that the increased amount of the securities was for usurious interest for the forbearance of its payment. This was but the usual error of arriving at a false conclusion by the use of equivocal or ambiguous terms.

The decree of the court below is, therefore, erroneous, in so far as it is affected by the assumption that the contract was usurious.

*Decree of the Circuit Court reversed, and record remitted, with directions to proceed in conformity to the opinion of this court.*