## APPEAL OF CARL LANG, ABRAHAM LANG, AND IRVING LEWIN.

Docket No. 2912.    Submitted July 22, 1925.    Decided January 21, 1926.

1. A partner agreed to sell his partnership interest to the other two partners, provided that the sales price should be $210,000 or $225,000, with varying provisions effective upon the exercise of either option by the vendees. *Held*, that the difference of $15,000 is not deductible as interest by the succeeding partnership.

2. The taxpayer's distributive share of partnership income determined.

*M. L. Seidman, C. P. A.*, for the taxpayers.
*Robert A. Littleton, Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

Carl Lang _____ $1,793.29
Abraham Lang_____    651.44
Irving Lewin_____    583.88

The main question is whether an item of $15,000 constituted interest and was therefore deductible in computing the net income of the partnership. A question is also raised as to whether the partnership income should be increased by $3,486.47, the difference between the profits used in the computation of the price to be paid Hoffman, upon the purchase of his interest by the other two partners, and his profits as computed by the Commissioner.

#### FINDINGS OF FACT.

The taxpayers, Carl Lang and Irving Lewin, were, for the first 10 months of 1922, partners with one M. C. Hoffman, engaged in the manufacture of silk under the firm name of Lang & Hoffman.

The three taxpayers were, for the last two months of 1922, partners, engaged in a business which succeeded to that previously referred to, the new partnership being conducted under the firm name of Lang & Lewin.

The firm of Lang & Hoffman was dissolved on November 1, 1922, pursuant to the following written agreement:

Agreement made this 1st day of November, 1922, by and between Carl Lang and Irving Lewin of the City of New York, parties of the first part and Meyer C. Hoffman of the same place, party of the second part:

The parties mutually agree as follows:

The party of the second part agrees that he will retire from the co-partnership firm of Lang & Hoffman, manufacturers of and dealers in silks, now located at 118 Madison Avenue, New York City and will sell, assign and transfer to the parties of the first part all his interest in all the assets of every kind and nature of said firm, including trade marks, trade names and copyrights upon payment by the parties of the first part of the purchase price agreed upon at the sum of Two hundred and ten thousand ($210,000) Dollars, to be paid at the times hereinafter provided.

The parties of the first part agree to purchase the said interest of the party of the second part for the said sum of Two hundred and ten thousand ($210,000) Dollars, and to pay the same as follows: Twenty-five thousand ($25,000) Dollars upon the execution hereof; Twenty-five thousand ($25,000) Dollars on or before the expiration of fifteen days from the execution hereof and the balance of One hundred and sixty thousand ($160,000) Dollars on or before the 1st day of December, 1922, together with interest on said postponed payments at the rate of six per cent (6%) per annum from the date hereof.

The party of the second part hereby agrees to loan to the parties of the first part at the time of the final payment hereunder, the sum of Twenty-five thousand ($25,000) Dollars to be evidenced by the negotiable promissory note of the parties of the first part payable with interest on May 1, 1923 and in case the successors of the said co-partnership of Lang & Hoffman should become incorporated, the said note of Twenty-five thousand ($25,000) Dollars shall be secured by Fifty thousand ($50,000) Dollars at par value of the preferred stock of the said corporation. The said corporation, or if the said successors shall not be incorporated, then the said firm or co-partnership shall assume the payment of all liabilities and obligations of the said firm and the said parties of the first part shall execute and deliver to the party of the second part an agreement indemnifying him against any liability by reason of such liabilities or obligations of the said firm of Lang & Hoffman as now or then existing.

Upon the consummation of the contract, the name of the party of the second part shall be discontinued in connection with the said business by the said firm or its successors.

The said party of the second part shall have the right to enter and carry on any business similar to that now carried on by said firm and shall not be debarred from dealing with present customers of the said firm. The said firm or its successors in carrying on their business, may designate themselves as successors to the firm of Lang & Hoffman.

Upon the final payment the said party of the second part's connection with the said firm shall cease as of November 1, 1922, and said party of the second part shall not be entitled to any drawings or profits from said date, nor shall he be liable for any losses from said date. Until, however, the final payment is made hereunder, the party of the second part shall remain a partner with all rights as such.

It is agreed as to any actions now pending, either in favor of or against the said firm, the parties of the first and second parts shall share in the proceeds and bear any losses, damages or expenses that may accrue in accordance with their present partnership interests as if this agreement had not been made.

The parties of the first part agree that upon final payment they will procure for and deliver to the party of the second part a release from Abraham Lang, releasing the party of the second part of and from any claim on his part as a creditor of the said firm. The party of the second part agrees that upon final payment he will execute and deliver any further documents or papers necessary or proper to consummate the transfer of his said interests in said business and to complete the agreement on his part.

It is understood that the purchase price to be paid hereunder to the party of the second part includes the amounts owing by the said firm of Lang & Hoffman to the Estate of Charles Hoffman and to the party of the second part personally, the said party of the second part assuming and agreeing to pay the said obligations to the said Estate and upon the closing hereunder the said party of the second part shall surrender for destruction the note of the firm held by the said Estate for Fifty thousand ($50,000) Dollars and the check or checks of the firm for Ten Thousand ($10,000) Dollars and will also at the time deliver an instrument in the form of a general release executed and acknowledged by the three executors of the Estate, releasing the firm of Lang & Hoffman from any liability whatsoever. At the same time the parties hereto will execute and deliver to one another general releases mutually releasing one another from all claims of every kind excepting matters to be performed under this agreement and the parties of the first part will at the same time deliver to the party of the second part a general release of all claims against the party of the second part executed and acknowledged by Abraham Lang.

It is further agreed that the parties of the first part shall have the option upon the first day of December, 1922, the date hereinbefore fixed for the closing of this contract, provided they shall have given at least ten (10) days notice in writing of the exercise of said option to the party of the second part, to purchase the interest of the party of the second part in said business at the price of Two hundred and twenty-five thousand ($225,000) Dollars instead of the price of Two hundred and ten thousand ($210,000) Dollars hereinbefore provided, such price of Two hundred and twenty-five thousand ($225,000) Dollars to be paid as follows: One hundred thousand ($100,000) Dollars in cash, the party of the first part to receive credit on account of such payment for the sum of Twenty-five thousand ($25,000) Dollars paid on the execution hereof and any further sum paid by him prior to the closing of this contract, and the balance of the purchase price amounting to One hundred and twenty-five thousand ($125,000) Dollars shall be paid by the parties of the first part as follows: Twenty-five thousand ($25,000) Dollars on the 1st day of February, 1923; Twenty-five thousand ($25,000) Dollars on the 1st day of May, 1923; Twenty-five thousand ($25,000) Dollars on the 1st day of August, 1923; Twenty-five thousand ($25,000) Dollars on the 1st day of November, 1923 and Twenty-five thousand ($25,000) Dollars on the first day of February, 1924. Said instalments to be evidenced by the promissory negotiable notes of the parties of the first part, payable at said respective dates without interest.

It is agreed that in case of default for ten (10) days in payment of any of the aforesaid notes, all of the remaining notes shall immediately become due and payable at the option of the party of the second part. The Twenty-five thousand ($25,000) Dollars loan does not apply to this alternative proposition.

It being understood that if the said business shall then or thereafter be incorporated the said notes shall be secured by the stock preferred and common of the said corporation issued to or held by the said parties of the first part or their nominees or belonging to them but not less than Two hundred and

ten thousand ($210,000) Dollars in book value, exclusive of good will, trade marks, trade names or labels.

It being agreed that if the parties of the first part should refuse to deliver the said stock as security after the incorporation of the business, the party of the second part may at his option, call and declare due all of the aforesaid notes delivered to him in addition to any remedy that he may have to recover the said securities.

It being understood that the parties of the first part may anticipate the said payments or any of them. And also as payments are made that the party of the second part will surrender to the parties of the first part five per cent (5%) of the said stock deposited as collateral.

Should the parties of the first part default in carrying out this contract in accordance with either of the foregoing alternatives, then the party of the second part may retain as liquidated damages, the sum of Ten thousand ($10,000) Dollars out of the amounts theretofore paid by the parties of the first part on account hereof and the balance shall then be returned to the parties of the first part and this contract shall cease and be void, and the interest of the party of the second part in said business to remain unimpaired.

The partnership of Lang & Lewin was forthwith organized on November 1, 1922, the books of the old partnership being continued and not closed.

The individuals, Carl Lang and Lewin, exercised the option stated in their agreement with Hoffman to pay the amount of $225,000 for Hoffman's interest in the partnership assets of Lang & Hoffman, and $100,000 was paid on account during 1922, the balance of $125,-000 being covered by notes delivered in 1922 but payable over 1923 and 1924.

The profits of the partnership of Lang & Hoffman were divisible between:

|  | Per cent. |
|---|---|
| Hoffman | 45 |
| Lang | 45 |
| Lewin | 10 |

The profits of the partnership of Lang & Lewin were divisible between:

|  | Per cent. |
|---|---|
| Carl Lang | 60 |
| Abraham Lang | 20 |
| Lewin | 20 |

The aggregate net profits of both partnerships, Lang & Hoffman, and Lang & Lewin, for the year 1922, were $72,233.74. In arriving at the value of Hoffman's interest as of November 1, 1922, the profits for the entire year were estimated at $75,000 and Hoffman's interest therein at $34,412.50. The taxpayers subtracted this amount from the aggregate net profits of the two partnerships, and then deducted $15,000 as interest, the balance being returned by them according to their respective interests.

The Commissioner treated both partnerships as a single business unit during the year 1922 and computed the net income as a unit. As the actual amount of net income was $72,233.74, instead of $75,-000, the Commissioner determined that the taxable income of each partner was:

| | |
|---|---|
| Hoffman | $30, 926. 03 |
| Carl Lang | 24, 784. 63 |
| Abraham Lang | 8, 261. 54 |
| Lewin | 8, 261. 54 |
| | 72, 233. 74 |

Hoffman's profits were first computed by the Commissioner and subtracted from the aggregate net profits of the two partnerships, the remainder being allocated to the taxpayers in proportion to their interests in the new partnership.

The Commissioner conceded at the hearing that an amount of $8 interest, withheld at the source on tax-free covenant bonds, was erroneously included in the income of Carl Lang.

### DECISION.

The deficiencies should be computed in accordance with the foregoing findings of fact and the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

### OPINION.

MORRIS: The taxpayers contend that the difference between $210,-000 which Carl Lang and Lewin might have paid under the agreement with Hoffman, and the $225,000 which they in fact paid, or $15,000, was in the nature of interest and deductible by the partnership of Lang & Lewin in determining its income for 1922.

The best evidence of its nature is the contract itself. The language is specific:

> The parties of the first part shall have the option upon the first day of December, 1922 * * * to purchase the interest of the party of the second part in said business at the price of $225,000 instead of the price of $210,000.

Under the first option the purchasers were obligated to pay the entire sum of $210,000 by December 1, 1922, with interest at the rate of 6 per cent from November 1, 1922, on the installment payments provided for under that option. Under the second option, fixed and flat amounts were provided for, $100,000 by December 1, 1922, against which the $25,000 paid at the execution of the agreement of November 1, 1922, would be credited, and the balance of $125,000 in five payments of $25,000 each on February 1, May 1, August 1, and November 1, 1923, and February 1, 1924. The in-

stallments were "to be evidenced by the promissory negotiable notes of the parties of the first part, payable at said respective dates without interest."

The fact that interest at 6 per cent was provided for under the first option and no interest on deferred payments under the second, might be the basis for the argument that the $15,000 was in the nature of interest, but it is just as conceivable that, by reason of the higher purchase price, Hoffman was willing to waive any claim to interest. The parties were free to make such arrangement and provide such terms as they saw fit—interest under one situation, no interest under another. The taxpayers, Carl Lang and Lewin, elected to pay a higher price, obtain a longer period for completing the payment and to save themselves from any interest obligations during that period.

The second question raised in the appeal is solved by a correction of what, in our opinion, is an improper allocation by both the taxpayers and the Commissioner of the aggregate net profits of the two partnerships to the various partners. The evidence shows a different interest in the partnership income of the two partnerships than that determined by the Commissioner. It also appears that, upon the dissolution of the old partnership, the books were not closed to determine the profits for the ten-month period. The aggregate net profits for the year 1922 were $72,233.74, but the net income of each partnership can not be determined. Under these circumstances, it is our opinion that ten-twelfths of the net profits for the year should be allocated to the partnership of Lang & Hoffman and two-twelfths to the partnership of Lang & Lewin, and should be accounted for by the taxpayers in proportion to their respective interests therein, as set forth in the findings of fact.