### APPEAL OF MARSH & MARSH, INC.

Docket No. 6064.    Promulgated December 22, 1926.

The petitioner bought a piece of property the actual cash value of which was not in excess of $25,000, and paid as the purchase price therefor the sum of $250 in cash and $250 per month, beginning on the first day of the next succeeding month, for 167 months. The total of these payments is $42,000. During the taxable years the petitioner was not entitled to deduct as interest any portion of the payments made during those years.

*John T. Kennedy*, Esq., for the petitioner.
*F. O. Graves*, Esq., for the Commissioner.

This appeal is from the determination of a deficiency in income tax for the years 1919, 1920, and 1921, in the total amount of $1,253.46, of which approximately $900 is in dispute. The Commissioner disallowed certain deductions which the petitioner claimed in its return as payments of interest. The Commissioner by an amended answer alleged that invested capital for the calendar year 1919 was reduced by $504.82, representing the prorated amount of 1918 tax, whereas it should have been reduced by $1,194.55, representing the total tax liability for the year 1918. There was no testimony, but from the exhibits and stipulation we make the following

### FINDINGS OF FACT.

On November 1, 1913, Carl A. Swanson and wife entered into a contract with the petitioner whereby they agreed to sell and it agreed to buy certain real estate in the City of Omaha, Nebr. This contract was in writing, was signed, sealed and acknowledged, and on December 17, 1913, was recorded. In it the petitioner agreed " to pay to said Carl A. Swanson as the purchase price for the same the sum of $250.00 in cash which sum was paid on October 18, 1913, * * * and also to pay him the sum of $250.00 per month beginning on December 1, 1913, and continuing at the said rate on the first of each and every month thereafter for 167 months."

The contract also provided:

The said payments being evidenced by 167 notes of $250.00 each bearing even date herewith, said notes to draw no interest until due, and to draw interest at the rate of 10% per annum from maturity until paid.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It is further agreed that the second party may at its option at any time after the expiration of 5 years from date hereof, pay any or all of said 167 notes not yet matured and shall be entitled to a discount on said notes in a sum equal to interest thereon at the rate of 4% per annum for the unexpired term for which said notes and each of them were to run.

It is agreed that at any time one half (½) of said notes are paid, the said premises shall be conveyed to the second party upon demand and upon the execution by it of a mortgage on said premises securing the payment of the balance of said notes.

This contract contained provisions for the protection of the seller in various cases of default, for the delivery of a deed upon the full payment of the purchase money, and a provision that the petitioner " shall be entitled to the possession of said premises so long as the conditions of this agreement shall remain unbroken by it * * *."

On November 1, 1913, the actual cash value of the premises so purchased and sold was not in excess of $25,000. The petitioner during each taxable year in question charged off on its books, as interest, a portion of the monthly payments made in pursuance of the contract, and charged off the balance as principal.

On June 12, 1922, Swanson and his wife conveyed the premises to the petitioner by a warranty deed which was duly recorded. This deed recited that the consideration was $25,000 and that the conveyance was in pursuance of the recorded contract. Twenty-five dollars' worth of revenue stamps were canceled on the deed.

On its income-tax returns the petitioner deducted as interest the following:

| | |
|---|---|
| For 1919 | $1,443.38 |
| For 1920 | 1,270.08 |
| For 1921 | 1,096.56 |

These deductions were disallowed by the Commissioner.

### OPINION.

MURDOCK: The petitioner would have us decide that the purchase price or cost of this property was not $42,000, as determined by the Commissioner, but was less than that amount, and was, in fact, $25,000. If facts, these matters were capable of proof and the burden of proving them was upon the petitioner.

In the contract it was stated that the purchase price was $250 in cash on the day of sale and 167 monthly payments of $250 each beginning on the first of the next month thereafter. These payments total $42,000. There is nothing in this contract which would indicate that the parties intended or considered that a part of the $42,000 was to be interest; indeed, it would appear that they intended the contrary.

The method of bookkeeping is not conclusive as to the amount of the purchase price, or cost, for obvious reasons, nor is the consideration mentioned in a deed executed and delivered at a date later than the years here in question. If stamps in a proper amount were canceled on the deed, that would indicate that the cash consideration was not more than a certain amount. But what of indebtedness assumed? We do not hold that these facts are without probative value, but merely that, in the light of the other facts in the case, the presumption of the correctness of the Commissioner's determination has not been overcome.

There is an old proverb, hackneyed and worn, but still true, to the effect that a bird in the hand is worth two in a bush. It may be applicable in this case. A cash customer may be able to secure goods at a lower price than that demanded from one who offers only part cash and the balance in future payments. We know that the actual cash value of the premises on November 1, 1913, was not in excess of $25,000. But what does that tell us about the purchase price to one who offers $250 cash and 167 equal monthly payments of $250? The parties to this sale may have considered that all, or

none, or a part of the deferred payments was interest. When the seller did not receive all of the purchase money in cash he took a risk. How can we say what portion of the excess over $25,000 he considered reimbursement for taking this risk, and how much he considered interest for the use of his money? *Appeal of Carl Lang*, 3 B. T. A. 417. The petitioner had the burden of proving facts necessary to the conclusion he desires us to reach; these facts were capable of proof, but have not been proven. We decline to relieve the petitioner by guessing, and therefore decide that the determination of the Commissioner must stand.

The Commissioner by an amended answer alleged that the petitioner's capital stock and surplus at the beginning of the year 1919 was reduced by $504.82, representing the prorated amount of the 1918 tax, whereas it should have been reduced by $1,194.55, representing the total tax liability for the year 1918. There was no proof offered in regard to this contention, no reference was made to it in argument or in briefs, and so far as it is concerned we hold in favor of the petitioner.

> *Judgment will be entered on notice of 15 days, under Rule 50.*