BARTON BEEK AND DOROTHY M. BEEK, ET AL.,[1] PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10037–80—10071–80, 10610–80,      Filed May 19, 1983.
10611–80, 14966–80.

*Thomas R. Sheppard* and *Michael D. Fernhoff*, for the petitioners.

---

[1]Cases of the following petitioners are consolidated herewith: Thomas A. Blakely and Maxine C. Blakely, docket No. 10038–80; James F. Blom and Marilyn O. Blom, docket No. 10039–80; Clifford W. Brown and Agnes K. Brown, docket No. 10040–80; Merton E. Burkholder and Dorothy J. Burkholder, docket No. 10041–80; Ernest L. Burland, Jr., and Doris H. Burland, docket No. 10042–80; John P. Chard and Margaret L. Chard, docket No. 10043–80; Raymond F. Choiniere and Carolyn C. Choiniere, docket No. 10044–80; Eugene A. Dedick and Beatrice L. Dedick, docket No. 10045–80; William A. Edis, Jr., and Carolyn J. Edis, docket No. 10046–80; Charles A. Fraser and Judith C. Fraser, docket No. 10047–80; Phineas Goldstein and Mary J. Goldstein, docket No. 10048–80; Neil E. Harkleroad, docket No. 10049–80; Robert P. Klose and Myrna Y. Klose, docket No. 10050–80; Jagdish N. Mathur and Sheela Mathur, docket No. 10051–80; James L. Miller and Elizabeth R. Miller, docket No. 10052–80; John C. Newlove and Alonna K. Newlove, docket No. 10053–80; Joseph A. Notaro and Jeannette P. Notaro, docket No. 10054–80; Andrew J. Oliver and Jean M. Oliver, docket No. 10055–80; Joseph M. Pahan, Jr., and Joanne M. Pahan, docket No. 10056–80; Alfonso Perez and Janice Y. Perez, docket No. 10057–80; Jean L. Philippe, Jr., and Margaret L. Philippe, docket No. 10058–80; Betty F. Price, docket No. 10059–80; Frank C. Price and Francis V. Price, docket No. 10060–80; Robert T. Riehl and Georgia L. Riehl, docket No. 10061–80; Robert M. Shoemaker and Francine D. Shoemaker, docket No. 10062–80; Stephen W. Stewart and Margaret F. Stewart, docket No. 10063–80; Andrew Swavely and Paula S. Swavely, docket No. 10064–80; Joseph E. Swavely and Shirley B. Swavely, docket No. 10065–80; Frank Tidikis and Kathleen M. Tidikis, docket No. 10066–80; Elmer A. Tunninsen, docket No. 10067–80; John R. Webb and Martha P. Webb, docket No. 10068–80; Fritz C. Westerhout, Jr., and Elaine M. Westerhout, docket No. 10069–80; Kenneth A. Woods and Shirley D. Woods, docket No. 10070–80; Estate of Virginia R. Young, Jean-Marie Sparling, Executrix, docket No. 10071–80; John G. Lowe and Linda J. Lowe, docket No. 10610–80; Pamela Grace Notaro, docket No. 10611–80; and Hiroshi Kamei and Tami Kamei, docket No. 14966–80.

*Rosa Berman*, for the respondent.

OPINION

NIMS, *Judge*: In these consolidated cases, respondent determined deficiencies and, by answer, alternative deficiences, in petitioners' Federal income taxes for the taxable year 1976, as follows:

| Docket No. | Deficiency per notice | Deficiency per answer |
|---|---|---|
| 10037–80 | $1,380.00 | $1,850.00 |
| 10038–80 | 1,173.00 | 1,489.00 |
| 10039–80 | 700.00 | 910.00 |
| 10040–80 | 1,610.00 | 2,100.00 |
| 10041–80 | 1,036.00 | 1,432.00 |
| 10042–80 | 1,837.66 | 2,491.50 |
| 10043–80 | 1,850.00 | 2,468.00 |
| 10044–80 | 442.00 | 592.00 |
| 10045–80 | 2,223.00 | 3,033.00 |
| 10046–80 | 360.00 | 478.00 |
| 10047–80 | 615.00 | 884.00 |
| 10048–80 | 248.00 | 333.00 |
| 10049–80 | 378.00 | 504.00 |
| 10050–80 | 538.00 | 721.00 |
| 10051–80 | 359.00 | 485.00 |
| 10052–80 | 222.00 | 298.00 |
| 10053–80 | 376.00 | 516.00 |
| 10054–80 | 253.00 | 348.00 |
| 10055–80 | 375.00 | 500.00 |
| 10056–80 | 966.00 | 1,304.00 |
| 10057–80 | 350.00 | 475.00 |
| 10058–80 | 305.00 | 415.00 |
| 10059–80 | 308.80 | 415.80 |
| 10060–80 | 378.00 | 504.00 |
| 10061–80 | 3,717.00 | 5,005.00 |
| 10062–80 | 640.00 | 877.00 |
| 10063–80 | 1,595.00 | 2,142.00 |
| 10064–80 | 145.00 | 190.00 |
| 10065–80 | 274.00 | 384.00 |
| 10066–80 | 150.00 | 200.00 |
| 10067–80 | 1,310.00 | 1,838.00 |
| 10068–80 | 1,226.00 | 1,643.00 |
| 10069–80 | 1,303.00 | 1,850.00 |
| 10070–80 | 518.00 | 701.00 |
| 10071–80 | 117.00 | 160.00 |
| 10610–80 | 3,464.86 | 4,837.48 |

| | | |
|---|---|---|
| 10611–80 ................... | $115.00 | $148.21 |
| 14966–80 ................... | 388.00 | 513.00 |

The issues for decision are (1) whether a portion of each payment made by a partnership in 1976 pursuant to a land purchase contract constitutes interest on indebtedness within the meaning of section 163;[2] (2) whether, if interest within the meaning of section 163, certain of these interest payments are rendered nondeductible in 1976 by virtue of section 461(g) because they are allocable to 1977; and (3) whether, if section 461(g) is inapplicable to these interest payments, respondent may nevertheless disallow any deduction in 1976 for interest payments allocable to 1977 under the authority of section 446(b).

All of the facts have been stipulated and are found accordingly.

All of the petitioners, as well as Jean-Marie Sparling, executrix in docket No. 10071–80, resided in California at the time the respective petitions were filed.

During the taxable year 1976, either one or both petitioners in each of the above dockets were limited partners of Crystal Wells Investors (hereinafter Crystal), a California limited partnership, were trustees of trusts which were limited partners of Crystal, or were partners in a partnership which was a limited partner of Crystal.

In 1968, Crystal Wells Apartments, Ltd. (hereinafter C.W.L.), purchased real property located at 12472 Haster Street and 13061 Lampson Avenue, Garden Grove, Calif., for $1,550,000. Upon its purchase of the property, C.W.L. assumed a $1,448,700 obligation of its seller to Los Angeles Federal Savings. The obligation was secured by first deeds of trust on the property and had borne interest at the rate of 6 percent per annum. Upon C.W.L.'s assumption of the obligation, Los Angeles Federal Savings raised the interest rate to 6.75 percent per annum and required C.W.L. to make monthly payments of $9,465 for interest and principal reduction.

Crystal was formed on August 16, 1976. On August 31, 1976, Crystal signed a "Long Form Security (Installment) Land

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.

Contract With Power of Sale," purchasing the above-described property from C.W.L. The contract provided for a $2 million total purchase price payable in paragraph 4, as follows:

(a) Vendee shall pay to Vendor the sum of $300,000 (down payment) as and for a down payment.

(b) The balance of the purchase price of $1,700,000 shall be paid by Vendee to Vendor and shall bear interest at the rate of 8¼% per annum of any balance unpaid. Said sum shall be paid as follows:

(i) $12,772 per month on the fifteenth day of each month through November 15, 1976;

(ii) $153,264 per year commencing on December 15, 1976, and payable annually thereafter on the 15th day of December of each year; unpaid balance all due and payable on December 15, 1986. * * *

C.W.L. further agreed to continue to make the payments to Los Angeles Federal Savings due on the first deed of trust notes. The unpaid principal balance of those notes, as of May 31, 1976, was $1,254,884.95.

On October 1, 1976, October 6, 1976, November 1, 1976, and December 1, 1976, Crystal issued checks to C.W.L. each in the amount of $16,182.75. The difference between the amount of these checks and the $12,772 called for in paragraph 4 of the purchase contract was attributable to amounts for impound taxes and insurance.

On December 23, 1976, Crystal issued a check payable to C.W.L. in the amount of $26,912 and a check payable to Los Angeles Federal Savings in the amount of $113,580. The $113,580 check was used by C.W.L. to prepay its 1977 principal and interest obligations to Los Angeles Federal Savings on the first deed of trust notes.

Crystal employed the cash receipts and disbursements method of accounting in keeping its books and in computing its taxable income.

On its Form 1065 for 1976, Crystal reported a deduction of $174,506 for "time-price differential" under section 163. This deduction represented a part of the payments made in 1976 by Crystal to or for C.W.L. under paragraph 4(b) of the land purchase contract.

In his statutory notices of deficiency, respondent disallowed a portion of Crystal's 1976 loss deducted by each petitioner herein on the ground that only $46,191 of the $174,506 time-price differential deduction reported by Crystal represented interest on indebtedness properly allocable to the taxable year

1976. By answer, respondent, in the alternative, increased each petitioner's deficiency on the ground that time-price differential is not interest within the meaning of section 163 and therefore the entire $174,506 of reported time-price differential must be added to the partnership's basis in the purchased property.

This case essentially involves whether petitioners have found a "loophole" (to quote their general partner) in the applicability of section 461(g) to prepaid interest. Specifically, petitioners seek to deduct certain payments made by Crystal to or for C.W.L. in 1976 as interest described in section 163, but not interest described in section 461(g). They argue that section 461(g)'s limitations on deducting prepaid interest do not apply to all types of interest deductible under section 163, but only to interest which represents a charge for the use or forbearance of money. They further contend that the $174,506 of 8¼-percent interest Crystal paid in 1976 on the $1,700,000 wraparound note is really time-price differential which does not represent a charge for the use or forbearance of money. Consequently, they say, section 461(g) does not apply to such interest payments.

Respondent, on the other hand, contends that all interest deductible under section 163 is affected by the limitations of section 461(g). In addition, respondent argues that in the event we should find such a subcategory of prepaid interest to exist to which section 461(g) does not apply, deducting such interest in petitioners' cases would cause an impermissible material distortion of income under section 446(b). Alternatively, respondent argues that if section 461(g) is not applicable to the $174,506 of "interest" or "time-price differential" paid by Crystal in 1976, then all of that amount must have been additional purchase price which must be added to the partnership's basis in the property.

Section 163(a) provides a deduction for "all interest paid or accrued within the taxable year on indebtedness." Section 461(g)(1) provides:

(1) IN GENERAL.—If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—

(A) with respect to which the interest represents a charge for the use or forbearance of money, and

(B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

In adopting section 461(g), Congress intended to place a cash basis taxpayer on the accrual method for purposes of deducting interest prepayments. *Zidanic v. Commissioner*, 79 T.C. 651, 654 (1982); *Schubel v. Commissioner*, 77 T.C. 701, 703 (1981).

Petitioners' argument begins, at least so far as it relates to the law of the United States,[3] with the venerable usury case of *Hogg v. Ruffner*, 66 U.S. (1 Black) 115 (1861). In that case, the Supreme Court stated:

> To constitute usury [under an Indiana statute reflecting the common law definition], there must either be a loan and a taking of usurious interest, or the taking of more than legal interest for the forbearance of a debt or sum of money due.

>   \*  \*  \*  \*  \*  \*  \*

> But it is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000 payable in ten annual instalments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand to double the sum in expectancy, and a purchaser may prefer the greater price with the longer credit; and one who will not distinguish between things that differ may say, with apparent truth, that B pays a hundred per cent for forbearance, and may assert that such a contract is usurious but whatever truth there may be in the premises, the conclusion is manifestly erroneous. Such a contract has none of the characteristics of usury; *it is not for the loan of money, or forbearance of a debt.* [66 U.S. (1 Black) at 118–119; emphasis supplied.]

Consistent with *Hogg v. Ruffner, supra,* in several early cases, the Board of Tax Appeals declined to treat the difference between the deferred payment sales price and the cash sales price as interest on indebtedness when the agreement of the parties did not treat the amount as interest. See *Daniel Brothers Co. v. Commissioner*, 7 B.T.A. 1086 (1927), affd. 28 F.2d 761 (5th Cir. 1928); *Anderson & Co. v. Commissioner*, 6 B.T.A. 713 (1927) (citing *Hogg v. Ruffner, supra*); *March & Marsh, Inc. v. Commissioner*, 5 B.T.A. 902 (1926); *Lang v. Commissioner*, 3 B.T.A. 417 (1926).

---

[3]Petitioners also cite *Beete v. Bidgood*, 7 B. & C. 453, 108 Eng. Rep. 792 (K.B. 1827).

In the later case of *Hudson-Duncan & Co. v. Commissioner*, 36 B.T.A. 554 (1937), however, the Board was presented with a situation where the buyer and seller in their contract agreed that a portion of each installment payment reflected interest at a rate of 6 percent. Under such circumstances, the Board held that a portion of each installment payment was deductible by the purchaser as interest paid on indebtedness.

The holding of *Hudson-Duncan & Co.* has survived to the present day: Where in an installment purchase the agreement of the parties contemplates payments in the nature of interest, those payments are deductible under section 163. See *Kingsford Co. v. Commissioner*, 41 T.C. 646, 659 (1964); *Judson Mills v. Commissioner*, 11 T.C. 25, 33–35 (1948). The result in cases such as *Daniel Brothers Co. v. Commissioner, supra*, and *Anderson & Co. v. Commissioner, supra*, however, has been legislatively modified by section 483 (added by section 224, Revenue Act of 1964, 78 Stat. 77), which requires that where no interest or a too low interest rate is stated in an installment sales contract, a portion of each installment payment is treated as interest. See S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 606; H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 196.

Petitioners do not question the holding of *Hudson-Duncan & Co. v. Commissioner, supra*. Indeed, petitioners explicitly rely on that holding to enable them to characterize $174,506 of Crystal's payments to or for C.W.L. in 1976 as interest within the meaning of section 163. Petitioners argue, however, that simply because interest payments on a purchase money obligation may be deductible under section 163, it does not follow that such interest payments in fact "represent[] a charge for the use or forbearance of money" as that phrase is used in section 461(g)(1)(A). They point to several California cases standing for the proposition that interest charges on the unpaid balance of installment purchases are not subject to the usury laws because such charges are not for the use of money or forbearance of a debt. *Boerner v. Colwell Co.*, 21 Cal. 3d 37, 145 Cal. Rptr. 380, 577 P.2d 200 (1978); *Wilson v. J. E. French Co.*, 214 Cal. 188, 4 P.2d 537 (1931); *Verbeck v. Clymer*, 202 Cal. 557, 261 P. 1017 (1927); *Eisenberg v. Greene*, 175 Cal. App. 2d 326, 346 P.2d 60 (2d Dist. 1959). These cases are outgrowths of the holding in *Hogg v. Ruffner, supra*, and although not the law in all jurisdictions, represent the majority position. See 45

Am. Jur. 2d Interest and Usury, secs. 123, 126 (1969), and cases cited therein. Petitioners contend that under these California cases, the interest payments Crystal made to or for C.W.L. in 1976 did not represent charges for the use or forbearance of money. Since section 461(g) applies only to "interest * * * allocable to any period—(A) with respect to which the interest represents a charge for the use or forbearance of money," they conclude that section 461(g) has no application to Crystal's interest payments. We disagree.

Petitioners' arguments are ingenious, but a trifle too ingenious. When in *Hudson-Duncan & Co. v. Commissioner, supra,* the Board held that interest payments from a buyer to a seller in an installment purchase were deductible under the predecessor of section 163, it was necessarily holding that for tax purposes such payments were considered *interest on indebtedness.* "[I]nterest * * * on indebtedness" as used in section 163 and its predecessors has long been synonymous with the phrase "a charge for the use or forbearance of money." See *Deputy v. du Pont,* 308 U.S. 488, 498 (1940); *Anderson & Co. v. Commissioner, supra* at 716. Thus, if a payment is properly described as interest under section 163 it is necessarily considered "a charge for the use or forbearance of money" as that phrase appears in section 461(g)(1)(A) and is subject to the allocation rules of section 461(g).

It is apparent from an examination of the California usury cases petitioners cite that somewhere in the past, usury law and tax law parted company on the question of whether interest charged on installment sales in fact represents a charge for the use or forbearance of money. The tax law is too well settled, however, for us to upset its answer, even if we were so inclined. In addition, Congress, both in section 483 and section 461(g), relied on the tax law's answer to this question in fashioning these provisions. This is particularly obvious from the legislative history of section 461(g).

Extensive portions of both the House and Senate committee reports accompanying the proposed section 461(g) are given over to describing tax shelters involving the prepayment of interest on wraparound mortgage notes. See H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 790–791; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 140–141. Interest on such notes, under petitioners' interpretation, does not represent a charge

for the use or forbearance of money. Yet the reports specifically go on to say:

> In adopting the new rule, the committee does not intend to change present law with regard to defining "interest." * * *
> Prepaid interest on an indebtedness secured by a "wraparound mortgage" will be subject to the general rule of this provision.[9]

[9]Since the provision focuses on the fact of prepayment as such, it is immaterial whether the borrower prepays interest (either voluntarily or contractually) to a third-party lender under the first mortgage rather than to the seller of the property. * * * [H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 792–793 (footnote in original); S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 142–143.]

Petitioners argue that if all interest described in section 163 is considered "a charge for the use or forbearance of money" as that phrase appears in section 461(g)(1)(A), then section 461(g)(1)(A) is rendered mere surplusage. On first reading, there certainly is some question as to what Congress meant by applying section 461(g) to "interest * * * allocable to any period—(A) with respect to which the interest represents a charge for the use or forbearance of money." That section 461(g)(1)(A) is meant to be a limiting term is clear from the following language appearing in both committee reports:

> Under this provision * * * , if a taxpayer uses the cash receipts and disbursements method to compute his taxable income, interest which he pays and which is properly allocable to any later taxable year must be charged to capital account and treated as paid by him in the periods in which (*and to the extent that*) the interest represents a charge for the use or forbearance of borrowed money * * * [H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 791–792 (emphasis added); S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 141–142.]

Other portions of the committee reports, however, clarify what Congress meant by the language in section 461(g)(1)(A). Both the House and Senate reports demonstrate a concern that certain buyers with the connivance of their sellers were attempting to deduct, as prepaid interest, payments which were in fact additional payments of purchase price.[4] In

[4]Footnote 3 of each committee report states:

"In some cases the investors (or their partnership) execute a purchase money mortgage note to the person who is selling the property to them. Although most sellers would ordinarily desire to receive a larger purchase price (capital gain) and less interest (ordinary income), many sellers are not adversely affected by receiving interest income. Some sellers may have expiring loss carryovers to absorb the interest income. Others are dealers who

explaining the application of the new provision, both Committees stated, in a footnote:

7 The committee does not intend to prevent the Treasury or the taxpayer from continuing (where appropriate) to characterize a purported "interest" payment as not true interest in the particular circumstances. It may thus be appropriate in some cases to treat a payment denominated "interest" as, in substance, additional purchase price of property, as a dividend, as payment for an option, etc. [H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 792; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 142.] [5]

The language used by the Senate in section 461(g)(1)(A) is clearly an attempt to clarify the fact that only prepaid interest which really is interest (for tax purposes) is subject to the allocation rules of section 461(g). To distinguish between what collusive buyers and sellers called interest in their contracts and true interest described in section 163, the drafters employed the word "interest" for the former concept and "a charge for the use or forbearance of money" for the latter. There is not the slightest evidence in the legislative history that the drafters were attempting to draw the distinction petitioners urge between ordinary interest and interest charged on installment purchases.

We therefore hold that all interest on indebtedness described in section 163 is subject to the allocation rules of section 461(g).[6]

Turning to the specific facts of this case, we first address respondent's alternative determination that the entire $174,506 of payments made by Crystal to or for C.W.L. in 1976 represents additional purchase price of the property and not interest. This argument was first raised by respondent in his

would realize ordinary income on the sale in any event; other sellers are pension funds, charities or other tax-exempt organizations."

H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 701, 790; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 140.

[5]Footnote 9 of each committee report contains the following sentence:

"In appropriate cases, however, the committee does not intend to prevent the Service from recharacterizing part or all of a buyer's (or borrower's) "interest" payment on a wraparound mortgage as, in substance, an additional down payment of principal or as a nondeductible deposit of interest with a third party. See Rev. Rul. 75–99, 1975–1 C.B. 197."

S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 143; H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 793.

[6]Our holding in this regard is consistent with our application of sec. 461(g) to the prepaid interest attempted to be deducted in *Zidanic v. Commissioner*, 79 T.C. 651 (1982). In *Zidanic*, such interest consisted of a one-time payment from a buyer to a seller of 8¼-percent interest on the unpaid purchase price of an office building. In *Zidanic*, however, the taxpayer did not raise the argument made by petitioners herein.

answers and resulted in an increased deficiency in each docket. Accordingly, respondent bears the burden of proof on this issue. Rule 142(a). Respondent has failed to meet that burden.

We find the payments made by Crystal on the wraparound note to be legally indistinguishable from the payments made by the purchaser in *Hudson-Duncan & Co. v. Commissioner, supra.* As in *Hudson-Duncan & Co.*, Crystal's purchase contract specifically allocated a portion of each installment payment to interest at a fixed rate on the unpaid balance of the purchase price. Respondent has introduced no evidence to show either that Crystal's interest rate was artificially overstated by the parties, that C.W.L. had any incentive to accept excessive interest in exchange for a lower purchase price, or that the parties ever contemplated a purchase price different from the $2 million aggregate figure they ultimately employed. Under such circumstances, we hold that $174,506 of the payments made by Crystal to or for C.W.L. in 1976 constituted interest on indebtedness within section 163(a), and not additional purchase price. *Judson Mills v. Commissioner, supra; Hudson-Duncan & Co. v. Commissioner, supra.*

Having determined that $174,506 of the payments made by Crystal in 1976 were interest, we next turn to respondent's determination that only $46,191 of such interest is properly allocable to 1976 and deductible under section 461(g). On this issue, petitioners bear the burden of proof. Rule 142(a).

We have held above that all interest described in section 163 is affected by the limitations imposed by section 461(g). Accordingly, the $174,506 of interest payments made by Crystal in 1976 are deductible only to the extent that they are allocable to the taxable year 1976. Petitioners have not disputed the amount of payments respondent has determined as allocable to 1976. Accordingly, respondent's determination on this issue is sustained.[7]

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

---

[7]Holding as we do, we need not address respondent's alternative argument under sec. 446(b) that petitioners may not deduct Crystal's prepaid interest because it would create a material distortion of income. We would observe, however, that the Ninth Circuit, to which all the instant petitions are appealable, has held in *Zaninovich v. Commissioner,* 616 F.2d 429 (9th Cir. 1980), revg. 69 T.C. 605 (1978), that rent payments made by a cash basis

---

taxpayer in December 1973, for a rental term ending in November 1974, were fully deductible in 1973, because they did not create an asset having a useful life of more than 1 year. See also *Hoopengarner v. Commissioner,* 80 T.C. 564 (1983); *Commissioner v. Van Raden,* 650 F.2d 1046 (9th Cir. 1981), affg. 71 T.C. 1083 (1979) (prepaid cattle feed). The Ninth Circuit's opinion in *Zaninovich* was recently cited with apparent approval in a hypothetical example in *Hillsboro National Bank v. Commissioner,* 460 U.S. ___, ___(1983). See also 460 U.S. at ___n.25 (Stevens, J., concurring in part and dissenting in part).