Barton BEEK and Dorothy M. Beek, et al., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Gerald T. and Anne SPARLING, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 83–7937, 84–7157.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1984.

Decided March 4, 1985.

Thomas R. Sheppard, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for petitioners-appellants.

Raymond Hepper, Dept. of Justice, Washington, D.C., for respondent-appellee.

---

* Hon. William H. Orrick, Jr., United States District Judge for the Northern District of Califor-

Before PREGERSON and BOOCHEVER, Circuit Judges, and ORRICK,* District Judge.

BOOCHEVER, Circuit Judge:

Petitioners were limited partners of a calendar year, cash-basis partnership. The partnership bought real property in 1976 under a contract calling for installment payments, and prepaid one year's worth of interest. The partners deducted that prepaid interest in full in 1976, and the Commissioner disallowed the portion of the deduction allocable to 1977. The Tax Court, 80 T.C. 1024, upheld the Commissioner, and the partners appeal. We affirm.

FACTS

All of the petitioners were limited partners of Crystal, a California cash-basis, calendar year partnership formed in August 1976. On August 31, 1976, Crystal contracted to buy real property from Crystal Wells Apartments, Ltd. (CWL). CWL was at the time paying off a deed of trust note to its bank at an interest rate of 6.75% per year. Crystal's land sale installment contract with CWL called for a $2 million total purchase price payable as follows:

(1) $300,000 down payment to CWL

(2) $1,700,000 balance to bear interest of 8¼% per year, and to be paid as follows:

    (a) $12,772 per month on the 15th day of each month through Nov. 1976.

    (b) $153,264 per year payable annually starting Dec. 15, 1976.

CWL agreed to continue to make the payments on its deed of trust to its bank (thus the new contract was a "wraparound mortgage"). Crystal made the required monthly payments, and then on December 15, 1976, made the first annual payment to CWL in the form of two checks, one to CWL, and one to CWL's bank. CWL used the latter check to prepay its 1977 principal

nia, sitting by designation.

and interest obligations on the deed of trust note. Crystal's limited partners, petitioners here, deducted the interest components of the monthly installments and the entire interest component of the first annual installment under I.R.C. § 163 on their 1976 tax returns.

Unfortunately for Crystal, in October 1976, after it had executed its contract with CWL, Congress legislated away their tax shelter by prohibiting the deduction of prepaid interest. The Commissioner issued notices of deficiency to each partner, disallowing the portion of the interest deduction in 1976 allocable to 1977 under I.R.C. § 461(g), which requires allocation of prepaid interest. In the alternative, the Commissioner argued to the Tax Court that even if section 461(g) did not require allocation, the court should nevertheless deny the deduction because it would result in an impermissible distortion of income under I.R.C. § 446(b). The Tax Court agreed with the Commissioner that section 461(g) required allocation, and therefore did not address the section 446(b) issue. Because we agree with the Tax Court's ruling on section 461(g), we affirm.

## DISCUSSION

I.R.C. § 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Before the enactment of section 461(g), if a cash-basis taxpayer prepaid interest, it was deductible under section 163(a) as paid in the taxable year, unless the Internal Revenue Service (the "Service") could disallow it under another provision. Because the increased deduction would offset income or create a loss, this was a commonly used device to defer tax on income into a lower marginal rate tax year. Section 461(g) was enacted to prevent this form of tax shelter. *See* S.Rep. No. 938, 94th Cong., 2d Sess. 101–03, *reprinted in* 1976–3 C.B. (pt. 3) 49, 139–41 [hereinafter Senate Report]; H.R. Rep. No. 658, 94th Cong., 1st Sess. 97–100, *reprinted in* 1976–3 C.B. (pt. 2) 695, 789–92, U.S.Code Cong. & Admin.News 1976,

2897, 2892–2995 [hereinafter House Report]. Section 461(g) provides:

(1) If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—

(A) with respect to which the interest represents a charge for the use or forbearance of money, and

(B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

Petitioners' claim, in essence, is that the 8¼% interest stated in Crystal's installment sale contract with CWL was "interest" deductible under section 163(a) but not "interest" allocable under section 461(g). The basis for this ingenious argument is a line of usury cases which distinguish interest paid on a loan from interest paid to the vendor in an installment sale. The latter, which is termed by some vendors "time-price differential," has been held by the Supreme Court and by a majority of states not to be subject to usury laws limiting interest rates. *Hogg v. Ruffner*, 66 U.S. (1 Black) 115, 118–19, 17 L.Ed. 38 (1861); *e.g.*, *Boerner v. Colwell Co.*, 21 Cal.3d 37, 45–47, 145 Cal.Rptr. 380, 385–86, 577 P.2d 200, 205–06 (1978); *see also* 45 Am.Jur.2d *Interest & Usury* § 123 (1969). Usury laws do not apply because the transaction is a sale, not a loan, and the interest paid is therefore not a charge for the use of money or forbearance of a debt. *Hogg*, 66 U.S. at 119. The policy reasons underlying usury laws do not apply in a bona fide sale, and the consumer credit industry of this country depends on that nonapplication. *Boerner*, 21 Cal.3d at 46, 145 Cal.Rptr. at 385, 577 P.2d at 205.

Petitioners argue that these cases establish, as a matter of law, that "interest" paid to the vendor on an installment sales contract is not a charge for the use or forbearance of money. Therefore section 461(g) does not apply, because by its own

terms it allocates interest to periods "with respect to which the interest represents a charge for the use or forbearance of money." Petitioners still contend, however, that their "time-price differential" is interest deductible under section 163(a), under what they say is the courts' expansive definition of "interest" for general deduction purposes.

Contrary to petitioners' theory, the wording of section 461(g), and its legislative history, make it clear that section 461(g) was intended specifically to disallow the deduction petitioners are trying to take. Petitioners contend that the legislative history is ambiguous. That is simply not the case. The Senate and House Reports each three times specifically refer to prepaid interest on vendor-financed installment transactions as covered by section 461(g). Senate Report, *supra*, at 102 n. 3, 102–03 & n. 5, 105 & n. 9; House Report, *supra*, at 98 n. 3, 98–99 & n. 5, 101 & n. 9. For example, both reports state:

> Prepaid interest on an indebtedness secured by a "wraparound mortgage" will be subject to the general rule of this provision.[9]

Senate Report, *supra*, at 105 & n. 9; House Report, *supra*, at 101 & n. 9, U.S.Code Cong. & Admin.News 1976, p. 3541.

Moreover, petitioners do not base their statutory interpretation on any tax case, but solely on usury cases. Tax cases do not distinguish between interest paid to lenders and to vendors, and no tax case has ever held that interest in the latter situation is not a charge "for the use or forbearance of money."[1] Therefore, Congress' use of this phrase in a tax statute should not be interpreted by reasoning transplanted from usury law, which is based on concepts and policies wholly alien to the tax arena. For tax purposes, interest paid to the vendor on an installment sale contract is deductible under section 163(a), and is subject to the allocation rule of section 461(g).

Petitioners also argue that there is no plausible meaning to Congress' use of the phrase "for the use or forbearance of money" other than their interpretation: to distinguish between interest on loans and interest on vendor-financed installment payments. The legislative history, however, flatly contradicts that interpretation by explicitly stating, as noted above, that section 461(g) applies to vendor-financed installment sales contracts. The Tax Court interpreted the phrase as an attempt to clarify the fact that only prepaid interest which

---

[9] Since the provision focuses on the fact of prepayment as such, it is immaterial whether the borrower prepays interest (either voluntarily or contractually) to a third-party lender under the first mortgage rather than to the seller of the property.

**1.** Petitioners call interest in the vendor-financed installment sales "time-price differential," and assert that it is a distinguishable subcategory of interest which should be treated separately under section 461(g) but not section 163(a). However, we have found no tax case mentioning the term "time-price differential" which has done anything but treat it as interest and/or finance charges. Most of the cases using the term do not even discuss its meaning. The term appears in the opinions because that particular vendor-taxpayer used it in his installment sales contracts, and the opinions commonly follow it with a parenthetical noting that it is interest and/or finance charges. *See W.T. Grant Co. v. Commissioner,* 483 F.2d 1115, 1117 (2d Cir.1973) (no discussion), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974); *Bank of America National Trust & Savings Ass'n v. United States,* 317 F.2d 859, 861 (9th Cir.1963) ("[i]n simple English ... means ... interest"); *Shapiro v. Commissioner,* 295 F.2d 306, 307 (9th Cir.

1961) ("interest and service charges"), *cert. denied,* 369 U.S. 829, 82 S.Ct. 844, 7 L.Ed.2d 794 (1962); *Morgan v. Commissioner,* 277 F.2d 152, 152 (9th Cir.1960) ("interest and finance charges"); *Pacific Industries, Inc. v. Mountain Inn, Inc.,* 232 F.Supp. 801, 806 (W.D.Ark.1964) ("finance charge" or "interest"); *Fowler v. Commissioner,* T.C.M. 1967–36, 26 T.C.M. (CCH) 175, 176 ("finance charge"); *Shapiro v. Commissioner,* T.C.M. 1959–151, 18 T.C.M. (CCH) 648, 651 (handling and finance charges); *cf. United States v. Cornish,* 348 F.2d 175, 183–84 (9th Cir.1965) ("time-price differential" interest but under pre-1964 rule if capital asset sold on installment basis with no provision in contract for interest, no interest imputed by court); *Estate of Bonnell v. Commissioner,* T.C.M. 1971–263, 30 T.C.M. (CCH) 1127, 1131 n. 5 (if no interest intended then no interest imputed even though gain on sale of debt instrument results from time-price differential).

really is a charge for the use or forbearance of money, as opposed to other amounts which the parties have labelled "interest," is subject to the allocation rules of section 461(g). 80 T.C. at 1033. The Tax Court's interpretation is supported by the Senate and House Reports, which note problems with accepting the interest and principal labels which taxpayers place on their payments, and state that section 461(g) was not intended to change the Service's current ability to recharacterize part of a payment from interest to principal, or vice versa. *See, e.g.,* Senate Report, *supra,* at 104 n. 7, 105 n. 9; House Report, *supra,* at 100 n. 7, 101 n. 9. The decision of the Tax Court is therefore

AFFIRMED.