PREBEN NORGAARD AND SANDRA C. NORGAARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Norgaard v. Commissioner
Docket No. 15221-87
United States Tax Court
T.C. Memo 1989-390; 1989 Tax Ct. Memo LEXIS 389; 57 T.C.M. (CCH) 1122; T.C.M. (RIA) 89390; July 31, 1989
Preben Norgaard and Sandra C. Norgaard, pro se. Jeffrey A. Hatfield, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to section 7443A(b) of the Code [1] and Rule 180 et seq. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined *391 a deficiency for petitioners' taxable year ended December 31, 1983, as follows: Additions to Tax
Section
Section
Section
Deficiency
6653(b)(1)
6653(b)(2)
6661(a)
$ 6,805.37
$ 3,402.69
50% of the
$ 1,701.35
interest on
$ 6,805.37
After a concession at trial by respondent's counsel regarding the fraud additions to tax the issues for decision are (1) whether petitioners' 1983 gambling loss deduction should be disallowed; (2) whether petitioner (Sandra Norgaard) is entitled to relief under the innocent spouse provisions of section 6013(e) from the deficiency in Federal income tax and the additions to tax resulting from her husband's claimed deductions for the taxable year 1983; and (3) whether petitioners after the concession by respondent are liable in the alternative for the additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661(a). Some of the facts have been stipulated. The stipulated facts and exhibits are found and are incorporated herein by reference. For clarity, we have combined our findings of fact and opinion for each issue in this case. Petitioners lived in San Diego, California, at the time they filed their *392 petition in this case. Petitioners filed a joint Federal income tax return for 1983. Petitioners, on such return, reported gambling income from a racetrack in the amount of $ 29,958 and offsetting losses from a combination of racetracks in the amount of $ 29,958. Respondent conceded at trial that petitioners had adequately substantiated losing tickets in the amount of $ 742, leaving at issue $ 29,216. Preben Norgaard (Preben) at all relevant times was employed as a residential property manager at Mission Hills Apartments, San Diego, California. Petitioners reported Schedule C income from such activity in the amount of $ 15,790 for 1983. During 1983 Preben placed wagers at the Hollywood Park racetrack situated in Inglewood, California, and the Del Mar racetrack located in Del Mar, California. Preben, his father, and two brothers attended the Del Mar racetrack frequently and have had season tickets for approximately fifteen years. Preben did not keep a daily log or other contemporaneous record of his gambling winnings, gambling losses, or the amounts that he wagered in 1983. Preben, though, did keep all of his alleged gambling tickets at home in a "brown paper bag." Preben *393 maintained he did not need to keep records of the "small winnings" by virtue of the fact that he was not engaged in the trade or business of gambling. Preben's brothers and their father, did save some of their gambling tickets. The gambling income figure reflected on petitioners' return consisted of five Forms W-2G issued to Preben by the Hollywood Park racetrack reflecting gross winnings of $ 29,958. Losses claimed by Preben were calculated on the basis that withdrawals during 1983 for his gambling activities from the Mission Hills account, which operated as his bankroll, were larger than the deposits of gambling winnings made to the same account during the year at issue. Preben earned additional amounts at the racetrack but further asserts that the gambling losses "washed out" the gambling gains. Preben supported his wife and three children on his gambling earnings and modest net earnings from his efforts as a property manager. The initial question presented for our determination is whether petitioners are entitled to a deduction for gambling losses allegedly sustained in 1983. Respondent disallowed the reported losses for lack of substantiation. Petitioners contend such *394 losses have been fully substantiated or alternatively that the gambling winnings constitute a "return of capital." Section 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Under section 1.165-10, Income Tax Regs., such losses are limited to the extent of gains from such transactions during the taxable year. The burden of proof is on petitioners to establish by competent evidence the amount of Preben's gambling losses. Preben kept no adequate records of his winnings or losses. Instead, he produced a large number of racetrack gambling tickets, which he testified were losing tickets he purchased. Tickets such as were introduced into evidence in this case are of slight, if any, evidentiary weight where no corroboration is offered of Preben's own statement that each and every losing ticket was purchased by him. See Scoccimarro v. Commissioner, T.C. Memo. 1979-455. We have no way of knowing whether Preben purchased these tickets or received them from relatives and *395 friends at the track or acquired them by resorting to the time-honored technique of "stooping"; i.e., stooping down and picking up the discarded stubs of disheartened bettors. On at least ten race dates, the aggregate dollar amount of gambling tickets presented to the Internal Revenue Service's agent at the first and second interviews with petitioners exceeded the aggregate dollar amount of the tickets presented by petitioners at trial. Moreover, although we recognize as a practical matter that Preben had gambling losses, it is also clear that Preben had additional gambling winnings. The only gambling winnings that found their way onto petitioners' Federal income tax returns were those reflected on information returns (Forms W-2G) provided by the racetrack to the Internal Revenue Service, with corresponding copies provided to petitioners. Forms W-2G are only issued for races where winnings on one ticket total over $ 600. Logic dictates and Preben admitted that he had additional winnings although Preben stated that he had no idea how much. In these circumstances we are unable to reach any basis for concluding that petitioners' unreported income did not equal or exceed their *396 claimed losses. Donovan v. Commissioner, 359 F.2d 64 (1st Cir. 1966), affg. per curiam T.C. Memo. 1965-247. Since Preben has established neither his true gambling income nor the relation of his losses thereto, no foundation has been laid for the application of the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Stein v. Commissioner, 322 F.2d 78, 83 (5th Cir. 1963), affg. a Memorandum Opinion of this Court. Furthermore Preben's argument that the gross gambling winnings constitute a return of capital does not find support among the cases discussing the issue. Preben derived his gambling income actively from his expenditure of time, energy, and skill rather than passively from the use of property. See Baxter v. United States, 633 F. Supp. 912 (D. Nev. 1986). Therefore we conclude that petitioners have failed to carry their burden of proof and that consequently no portion of the claimed losses may be allowed. The next issue for our decision is whether Sandra Norgaard (Sandra) is entitled to relief under the innocent spouse provisions of section 6013(e) for the taxable year 1983. *397 Sandra was engaged as a housewife for the year at issue. The only evidence in the record regarding the above issue is that Sandra knew of Preben's gambling activities and that she furthermore voluntarily signed a blank Form 1040 at the request of Preben. Sandra contends that she should be relieved of the joint and several liability imposed by section 6013(d)(3) for the deficiency because she is an "innocent spouse" under section 6013(e). Respondent contends that Sandra fails to meet the requirements of section 6013(e)(1)(C). We must therefore decide whether Sandra is relieved of joint and several liability for the deficiency by virtue of the innocent spouse provisions of section 6013(e). When a husband and wife file a joint return, they are generally jointly and severally liable for the tax due thereon. Sec. 6013(d)(3). Therefore, notwithstanding the fact that Sandra's efforts did not produce the unsubstantiated gambling loss deduction, Sandra is individually liable for the tax resulting from these determinations unless she qualifies as an "innocent spouse." *398 An "innocent spouse" will be relieved of liability if all of the following elements are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *. [Sec. 6013(e)(1).] All four statutory requirements must be met for the taxpayer to be afforded relief. Estate of Jackson v. Commissioner, 72 T.C. 356, 360 (1979). The taxpayer bears the burden of proving that each element has been satisfied. Rule 142(a); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). To satisfy the "knowledge" requirements of section 6013(e)(1)(C), Sandra must establish that in signing the 1983 joint return, she *399 did not know and had no reason to know that there was a substantial understatement of tax. Thus, it is not enough for Sandra to show that she lacked actual knowledge of the understatement. She must also show that she had no reason to know of the understatement. Adams v. Commissioner, 60 T.C. 300 (1973); Sonnenborn v. Commissioner, supra.This issue is essentially factual. In order to prove that Sandra had no reason to know of the understatement, she must convince us that a reasonably prudent person with her knowledge of the surrounding circumstances would not and should not have known of the understatement, keeping in mind her level of intelligence, education and experience. Cf. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). We stated in Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979), that the standard to be applied is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to "know" of the understatement. Applying this standard to the facts of the present case, we conclude that petitioner has failed to meet the test *400 and is, therefore, not entitled to the relief afforded by section 6013(e). Sandra did not participate in the preparation of the 1983 return, review its contents or make any inquiries regarding the return. Consequently, she would like us to conclude that she had no actual knowledge of the understatement of tax caused by Preben's claimed gambling losses. This may be so. However, Sandra's awareness of the extent of Preben Norgaard's gambling activities and the fact that petitioners' income exclusive of Schedule A expenses, totalled $ 7,465 for a family of five should have put her on sufficient notice to review the return before it was completed and mailed. Accordingly, we hold that Sandra has not met her burden of showing that there were no facts within her knowledge, or as to which she was reasonably chargeable with knowledge or notice, from which a prudent taxpayer would have known of the substantial understatement of tax in the 1983 joint return. Sandra thus fails to qualify as an innocent spouse for the taxable year at issue. Respondent at trial conceded the fraud additions to tax and alternatively alleged additions to tax for negligence. Therefore the next issue for *401 our decision is whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for the taxable year 1983. Since respondent raised this addition to tax as a new matter, he has the burden of proving that it is warranted. Reiff v. Commissioner, 77 T.C. 1169, 1173 (1981); see Beek v. Commissioner, 80 T.C. 1024, 1034 (1983), affd. 754 F.2d 1442 (9th Cir. 1985); Rule 142(a). Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. "Negligence" is lack of care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). As we have already stated, petitioners did not adequately substantiate their *402 gambling loss deductions. Although taxpayers are not subject to the addition to tax for negligence where they make honest mistakes in complex matters, they are required to take reasonable steps to determine the law and to comply with it. See Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984). This petitioners simply have not done. Therefore we sustain respondent on the additions to tax under section 6653(a)(1) and (2). Respondent also determined that petitioner is liable for an addition to tax pursuant to section 6661 for the year at issue at a rate of 25 percent of the underpayment. Pollottini v. Commissioner, 90 T.C. 498 (1988). Section 6661 authorizes an addition to tax when there is a substantial understatement of income tax in any given year. An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. The amount *403 of the understatement is reduced by the portion of the understatement which is attributable to a taxpayer's treatment of an item if there is or was substantial authority for such treatment, or if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(i) and (ii). Here, there is no question but that petitioners substantially understated their tax liability for 1983. Further, it is clear that substantial authority did not exist for the position taken by petitioners that the alleged tickets in and of themselves provided adequate substantiation for the claimed deduction. However, in determining the applicability of the addition to tax under section 6661, the amount of the understatement is reduced by that portion of the understatement which is attributable to an item (other than an item attributable to a tax shelter - see section 6661(b)(2)(C)) if "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return." Sec. 6661(b)(2)(B)(ii). *404 Although the statute does not state what constitutes "adequate disclosure" of "relevant facts," the regulations amplify the two ways in which a taxpayer can satisfy the adequate disclosure standard under section 6661(b)(2)(B)(ii): disclosure in statements attached to the return, sec. 1.6661-4(b), Income Tax Regs., and disclosure on the return, sec. 1.6661-4(c), Income Tax Regs. Petitioners did not attach a statement to their return; hence, section 1.6661-4(b), Income Tax Regs., is not applicable. Section 1.6661-4(c), Income Tax Regs., provides that respondent may, by revenue procedure, prescribe the circumstances in which information provided on the return will constitute adequate disclosure for purposes of section 6661. In accordance with such regulatory authority, respondent issued Rev. Proc. 84-19, 1984-1 C.B. 433, (revenue procedure) applicable to returns filed in 1984. *405 Although the revenue procedure sets forth certain types of expenses and items which may give rise to potential tax controversies and the manner in which such expenses and items should be reported in order to constitute adequate disclosure, the listing does not include wagering losses. Since wagering losses are not included in the revenue procedure petitioners have failed to meet the adequate disclosure requirement as regards the revenue procedure. However, where a taxpayer fails to comply with the disclosure procedures set forth in the revenue procedure issued pursuant to section 1.6661-4(c), Income Tax Regs., the requirements of adequate disclosure on the return can nonetheless be met if the return provides sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). This standard of disclosure requires "greater disclosure than is necessary to avoid the six-year statute of limitations provided for in section 6501(e)(1)(A)." Staff of Joint Comm. on Taxation, *406 General Explanation of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1982). The disclosure required under section 6501(e)(1) has been held to require the production of a "clue" with respect to the omission of gross income. University Country Club, Inc., v. Commissioner, 64 T.C. 460, 470 (1975), citing Colony, Inc. v. Commissioner, 357 U.S. 28 (1958). On their 1983 return, petitioners simply deducted the entire amount of gambling losses. Assuming, arguendo, that such sufficed as a "clue," it clearly did not provide sufficient information to enable respondent to identify the potential controversy involved for purposes of satisfying the adequate disclosure standards under section 6661. Accordingly, we find petitioners liable for the addition to tax under section 6661 for 1983. To reflect the foregoing and the concession by respondent, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1983, and rule numbers refer to the Rules of Practice and Procedure of this Court.↩